# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**November 1, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**K.C.,**
**Claimant Below, Petitioner**

**vs.) No. 22-ICA-323**       (BOR Appeal No. 2058423)
                              (JCN: 2019025009)

**APPALACHIAN COMMUNITY HEALTH,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner K.C.[1] appeals from the November 18, 2022, decision of the Workers' Compensation Board of Review ("Board") that affirmed the Office of Judges' ("OOJ") decision upholding four claim administrator's orders in which the claim administrator 1) denied a request to add post-traumatic stress disorder ("PTSD") as a compensable diagnosis in the claim, denied authorization of a mental health evaluation for possible PTSD, and denied authorization for a second opinion with pain management for possible complex regional pain syndrome ("CRPS"); 2) denied authorization for continued physical therapy for the right upper extremity; 3) granted a 0% permanent partial disability ("PPD") award; and 4) closed the claim for temporary total disability benefits ("TTD"). Employer Appalachian Community Health ("ACHC") timely filed a response.[2]  K.C. did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the Board's Order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The injury that is the subject of this appeal occurred on May 22, 2019, when K.C. was in a motor vehicle accident in the course of and resulting from her employment with

---

[1] Consistent with West Virginia practice in cases with sensitive facts, we use initials to protect the identities of those involved. *See, B.J.R. v. Huntington Alloys Corp.*, No. 20-0548, 2022 WL 123125, at *1 n.1 (W. Va. Jan. 11, 2022) (memorandum decision); *see also* W. Va. R. App. P. 40.

[2] K.C. is represented by James D. McQueen, Esq. ACHC is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

ACHC. The claim administrator held the claim compensable on June 19, 2019, for a neck strain, abdominal contusion, right forearm contusion, and a right wrist abrasion.

On July 29, 2019, Nicole Radabaugh, FNP-BC, K.C.'s treatment provider, filed two Diagnosis Update forms indicating the following diagnoses: pain in the right upper extremity (consisting of pain in the right wrist, right shoulder, and right neck); neuralgia (consisting of pain in the limbs, back, and ears); thoracic spine pain; right facial numbness and pain; and PTSD.

On August 26, 2019, David B. Watson, M.D., saw K.C. at the West Virginia University ("WVU") Headache Center. Dr. Watson, an associate professor of neurology, diagnosed post-traumatic headaches, although he also commented on K.C.'s long history of migraines. Importantly, Dr. Watson remarked that her symptoms of arm pain, cold hand, and edema suggested CRPS for which he recommended that she see a specialist.

Randall L. Short, D.O., performed a record review on September 6, 2019, and found that the conditions that Nurse Radabaugh sought to be added to the claim, including PTSD, were not causally related to the compensable injury. Specifically, Dr. Short determined that K.C.'s low speed motor vehicle accident resulted only in sprains/strains, contusions, and abrasions. Dr. Short also noted that K.C. did not lose consciousness and that her subjective complaints were unsupported by objective diagnostic testing and physical exams. However, Dr. Short commented that a psychiatric consult "may be of benefit" since K.C. had been taking an anti-depressant prior to the injury.

On September 11, 2019, Brenden J. Balcik, M.D., with the WVU Concussion Clinic, examined K.C. for her complaints of concussion, headaches, and right-sided facial pain, although, at the time, the diagnosis of concussion had not yet been ruled compensable. K.C. also complained to Dr. Balcik of worsening weakness and pain in the right upper and right lower extremities. Although Dr. Balcik could not explain K.C.'s report of worsening concussion symptoms, he recommended continued physical therapy to treat the concussion and cervical spine. Dr. Balcik commented that the etiology of the weakness in the right upper and right lower extremities was unclear. Although Dr. Balcik noted that CRPS was a possibility, he observed that K.C.'s lack of strength was "effort dependent" and commented that she walked without a limp and could easily raise her arm above her head. Dr. Balcik suggested an EMG of the right upper and right lower extremities and a pain management referral. Less than two weeks later, on September 23, 2019, Dr. Lynch performed EMGs of K.C.'s right arm and leg and found the studies to be unremarkable.

On October 14, 2019, neuropsychological testing was performed by William T. McCuddy, Ph.D., a neuropsychology postdoctoral fellow, and James Mahoney, Ph.D., an assistant professor at WVU Department of Behavioral Medicine and Psychiatry. Drs. McCuddy and Mahoney opined that the testing suggested "suboptimal engagement" by K.C. and resulted in an "underestimation of her actual abilities." However, the evaluators

found that the testing suggested symptoms associated with depression and anxiety. Further, the evaluators commented that cognitive recovery after a concussion "is typically dependent on the nature and characteristics of the injury" and noted that K.C.'s injury was relatively mild. Thus, the evaluators felt that K.C.'s symptoms would have been expected to have resolved in a few weeks or months—whereas her injury was five months prior to the evaluation. Finally, the evaluators remarked that K.C.'s right arm and hand appeared mildly swollen and weak in comparison to the left side and that she attempted writing tasks with her non-dominant hand. However, Drs. McCuddy and Mahoney ascertained that K.C.'s neuropsychological profile was "not inconsistent with CRPS."

In an undated letter, Richard Vaglienti, M.D., advised that the result of a three-phase nuclear bone scan, used to confirm the diagnosis of CRPS, was normal and showed no pattern of uptake consistent with CRPS anywhere on K.C.'s body. Dr. Vaglienti commented that a negative test was "highly predictive" that a patient does not have CRPS. In testimony taken on April 23, 2021, Dr. Vaglienti identified himself as the director of the WVU Pain Clinic and discussed his examination of K.C. that took place on October 25, 2019. Dr. Vaglienti said that the examination revealed that K.C. had equal strength in both upper extremities and overall, was inconsistent with a diagnosis of CRPS. Also, Dr. Vaglienti explained that K.C.'s presentation was inconsistent with her reported level of pain. Dr. Vaglienti determined that K.C. did not meet the Budapest criteria for CRPS except for the subjective criteria. Finally, he noted that the three-phase bone scan is highly negatively predictive. Dr. Vaglienti observed that symptom magnification could explain K.C.'s pain and dysfunction.

By orders dated November 4, 2019, and December 18, 2019, the claim administrator added the following as compensable secondary conditions in the claim: concussion without loss of consciousness, and strain of other specified muscles, fascia, and tendons of the right wrist and hand.

At a December 6, 2019, visit, Nurse Radabaugh, referred K.C. to a CRPS specialist "to evaluate for a second opinion." Also at that visit, Nurse Radabaugh requested a psychiatric evaluation.

The claim administrator sent K.C. to Christopher Martin, M.D., for an independent medical evaluation ("IME") on February 18, 2020. Dr. Martin determined that K.C.'s subjective complaints were not supported by objective evidence. He noted that the car accident was not serious as it did not occur at high speed, K.C. did not lose consciousness, and the occupants of the other vehicle did not require medical attention. Dr. Martin commented that K.C.'s symptoms had "migrated" over time, and now included most of her body. Further, he noted that K.C.'s symptoms did not follow any obvious anatomic pattern. Dr. Martin's examination findings were not supportive of a diagnosis of CRPS, and he noted that Dr. Vaglienti doubted the diagnosis. Since Dr. Martin did not diagnose CRPS, he did not recommend a referral for the condition as it was not medically necessary or

appropriate. Further, while Dr. Martin opined that K.C. had a significant mood disorder that required treatment, he did not diagnose PTSD and he noted that the neuropsychological testing did not support the diagnosis. Dr. Martin placed K.C. at maximum medical improvement ("MMI") for the compensable injury. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("*Guides*"), Dr. Martin found no impairment related to a concussion, headaches, right wrist, and abdomen. Also, since he found normal cervical range of motion and noted a normal EMG, Dr. Martin found no impairment in the cervical spine.

In a Physician Review dated March 3, 2020, Rebecca Thaxton, M.D., determined that Dr. Martin's February 2020 IME, finding no impairment for the injuries and no diagnosis of PTSD, was supported and thorough. Dr. Thaxton also noted that Dr. Martin's findings did not support a diagnosis of CRPS and she did not feel that a second opinion for pain management should be authorized.

On March 4, 2020, Dr. Balcik again examined K.C., who reported no improvement in ten months. Dr. Balcik suspected that a "psychiatric component" was playing a large role in her condition and he was "hesitant" to attribute her symptoms to post-concussion syndrome. He recommended that K.C. see a psychiatrist. Dr. Balcik ordered further physical therapy, which was requested by K.C., although he expressed his doubt that it would help since she had not shown improvement thus far.

On April 6, 2020, the claim administrator issued an order granting no PPD award based on Dr. Martin's IME. Also on that date, the claim administrator issued a notice that TTD benefits were suspended because Dr. Martin placed K.C. at MMI.

On April 14, 2020, Mohammed Fahim, M.D., a pain management physician, examined K.C. and diagnosed right upper extremity CRPS, and pain in the right arm and wrist. Dr. Fahim did not address the negative EMG or bone scan, but he determined that K.C. needed injections to treat CRPS. In a deposition on June 3, 2021, Dr. Fahim testified that he did not agree with Dr. Vaglienti's opinion that a three-phase bone scan was highly predictive of CRPS. Dr. Fahim continued to diagnose CRPS and explained that her atrophy was not obvious because of swelling. He noted that stellate ganglion block procedures had not successfully treated K.C.'s pain. Dr. Fahim asserted that K.C. met the Budapest criteria for diagnosing CRPS and noted that her right upper extremity experienced color and temperature changes, swelling, and decreases in range of motion and motor power.

In a medical review report dated April 16, 2020, Dr. Thaxton recommended that additional physical therapy for right upper extremity pain and weakness be denied since K.C. had achieved MMI. Pursuant to West Virginia Code of Rules § 85-20-46.7 - 46.8 (2006), Dr. Thaxton noted that K.C. did not qualify for additional therapy. By order dated May 6, 2020, the claim administrator closed the claim for TTD benefits.

4

By order dated May 13, 2020, the claim administrator denied Nurse Radabaugh's request to add PTSD as a compensable condition in the claim and denied the request for a mental health evaluation for possible PTSD. Additionally, the order denied a request for a second opinion with pain management for possible CRPS. The basis of the order was the StreetSelect Grievance Board Determination dated May 13, 2020,[3] which found that PTSD was not supported based on the reports of Dr. Short, Dr. McCuddy, and Dr. Thaxton. The StreetSelect Grievance Board also concluded that CRPS was not a supportable diagnosis based on Dr. Martin's report, an EMG, and Dr. Thaxton's report. Thus, it was determined that an evaluation for PTSD and a second opinion for possible CRPS were not supported.

By order dated May 27, 2020, the claim administrator denied Dr. Balcik's request for continued physical therapy for the right upper extremity. This order was based on the StreetSelect Grievance Board's Determination dated May 27, 2020, which concluded that Dr. Balcik had indicated that he was unsure whether additional therapy would benefit K.C. since it had not proven helpful thus far. Further, the StreetSelect Grievance Board noted that upon a review of Dr. Balcik's request, Dr. Thaxton recommended it be denied because K.C. had been placed at MMI for the injuries in the claim.

On August 17, 2020, Bruce A. Guberman, M.D., examined K.C. and placed her at MMI for the injury, although he recommended further treatment including a spinal cord stimulator. Dr. Guberman diagnosed "probable" CRPS, noting that K.C.'s right arm and hand were redder and warmer than the corresponding left side. He rated K.C.'s whole person impairment at 16% and commented that it would not change even if CRPS were ruled compensable. His impairment rating included the cervical spine, right wrist, right elbow, right shoulder, and headaches. In a deposition taken on April 5, 2021, Dr. Guberman testified that K.C. met the criteria set out in the AMA *Guides to the Evaluation of Permanent Impairment*, 6th Edition, for CRPS; however, he explained that he relied upon the *Guides* 4th edition when he rated K.C.'s impairment. Dr. Guberman also commented that while he felt a spinal cord stimulator trial was indicated when he examined K.C., he placed her at MMI if no further treatment was allowed. On the other hand, he also indicated that she was not technically at MMI since further treatment was needed.

In deposition testimony taken on March 11, 2021, Dr. Martin explained that CRPS was not supported because K.C.'s absence of atrophy in the right upper extremity was inconsistent with her reports of marked weakness. Further, Dr. Martin noted that nothing in his examination of K.C. supported the diagnosis of CRPS and he observed that Dr. Vaglienti doubted the diagnosis. Dr. Martin opined that neuropsychological testing, as conducted by Dr. Mahoney, is not how CRPS is diagnosed. However, Dr. Martin felt that Dr. Mahoney had only found that the test results were not inconsistent with a finding of

---

[3] The StreetSelect Grievance Board Determination was issued in response to a grievance K.C. filed of the claim administrator's previous order dated April 22, 2020, which denied physical therapy.

CRPS. Finally, while Dr. Martin felt that K.C. could benefit from a psychological evaluation, he did not feel that the indication for such an evaluation was related to the compensable injury because it was a relatively minor accident.

Kelly Agnew, M.D., conducted an IME of K.C. on June 2, 2021. Based on the examination and the results from diagnostic testing (including a three-phase bone scan, MRI, and diagnostic injections), Dr. Agnew opined that K.C. did not suffer from CRPS. Instead, Dr. Agnew found that her presentation was "nonorganic" as she did not have atrophy of her arm, forearm, or shoulder and her report of sensory disturbance was not supported by electrodiagnostic testing. Importantly, Dr. Agnew observed K.C. exhibit different motion when she was walking versus when she was performing range of motion testing. Dr. Agnew placed K.C. at MMI with no impairment related to the compensable injury.

In testimony taken on June 10, 2021, Nurse Radabaugh mentioned that she had treated K.C. since 2018 for conditions that were both unrelated and related to the compensable injury. According to Nurse Radabaugh, when K.C.'s pain did not subside after the compensable accident in 2019, she suspected CRPS was causing the pain. Nurse Radabaugh said that she referred K.C. to a pain clinic. After that, Dr. Watson diagnosed CRPS. Nurse Radabaugh also explained that K.C. experienced increased anxiety, depression, and headaches after the accident.

Psychiatrist Timothy Thistlethwaite, M.D., authored a report dated June 14, 2021, reflecting his evaluation findings of K.C., whom he examined on May 3, 2021. Dr. Thistlethwaite considered the psychological testing and findings by Rosemary Smith, Psy.D. Importantly, Dr. Thistlethwaite ruled out a diagnosis of PTSD, although he determined that K.C. was suffering from significant anxiety related to the compensable injury. Dr. Thistlethwaite ultimately diagnosed the following psychiatric conditions: unspecified trauma and stressor related disorder; major depressive disorder, single episode; and "rule out" somatic symptom disorder. While he noted that K.C. had a history of mild depression and significant anxiety disorder, she told him that those symptoms had resolved and that she had not received treatment for them after her freshman year of college until her compensable injury. Dr. Thistlethwaite felt that K.C. should be treated by a psychiatrist, potentially with pharmacotherapy and behavioral therapy.

K.C. protested the following claim administrator's orders to the OOJ: the April 6, 2020, order granting no PPD; the May 6, 2020, order closing the claim for TTD benefits; the May 13, 2020, order denying a request to add PTSD as a compensable condition, and requests for an evaluation for possible PTSD and a second opinion with pain management for possible CRPS; and the May 27, 2020, order denying the authorization request for continued physical therapy. On May 20, 2022, the OOJ issued its ruling affirming all of the orders. The OOJ noted the voluminous record and set out detailed findings of fact derived from the evidence submitted. First, the OOJ addressed the compensability of PTSD

6

and found that, although Nurse Radabaugh raised the possibility of a PTSD diagnosis, it was more likely than not that K.C. did not suffer from PTSD. For this conclusion, the OOJ relied on the findings of Drs. McCuddy, Mahoney, Martin, Thaxton, Short, and Thistlethwaite. Second, upon finding that the claim administrator had properly rejected the compensability of PTSD, the OOJ also concluded that the denial of a mental health evaluation for PTSD was also appropriate.

The third issue addressed by the OOJ was whether the claim administrator properly denied a request for a second opinion with a pain management physician regarding CRPS. The OOJ affirmed the denial, noting that multiple opinions about CRPS had already been obtained and a second opinion was simply unnecessary. In particular, the OOJ relied on the evaluation and testimony by Dr. Vaglienti, and the evaluation by Dr. Agnew. Also, the OOJ noted that the claim administrator had not addressed the compensability of CRPS in its order and it was unclear whether there had even been a request to add the diagnosis to the claim. Therefore, the OOJ declined to address the compensability issue.

The fourth issue addressed by the OOJ was whether the claim administrator erred in granting no PPD for the compensable injury. The OOJ reviewed the impairment determinations by Drs. Martin, Guberman, and Agnew. Dr. Guberman's impairment rating was not found to be credible by the OOJ, because he placed K.C. at MMI yet indicated that she was not at MMI and needed additional significant treatment. Since both Drs. Martin and Agnew found no impairment from the injury, the OOJ affirmed the claim administrator's order that granted no PPD. The fifth issue addressed by the OOJ was the closure of the claim for TTD benefits. The OOJ affirmed the closure of the TTD benefits, finding that Dr. Martin properly placed K.C. at MMI, and therefore, the claim administrator correctly terminated TTD benefits.

The sixth and final issue addressed by the OOJ was whether the authorization request for continued physical therapy had been correctly denied. The OOJ observed that Dr. Balcik, who requested continued therapy, indicated that he was unsure whether K.C. would benefit from the treatment because the prior therapy was unhelpful. Reports of Drs. Martin and Agnew were also relied upon by the OOJ for its conclusion that continued physical therapy was correctly denied.

The OOJ then addressed K.C.'s closing argument that the evaluation by Dr. Thistlethwaite should be relied upon by the OOJ to direct the claim administrator to implement the process outlined in *Hale v. West Virginia Office of Insurance Commissioner,* 228 W. Va. 781, 724 S.E.2d 752 (2012). Further, the claim administrator should be required to enter a protestable order regarding psychiatric conditions. The OOJ declined K.C.'s request, and instead, advised the claim administrator to consider the compensability of psychiatric conditions, if it had not already done so, and suggested to K.C. that filing a diagnosis update should trigger the claim administrator's issuance of a protestable order.

K.C. protested all of the above issues to the Board. On November 18, 2022, the Board entered an order adopting the findings and conclusions of the OOJ. K.C. now appeals the Board's order to this Court.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, K.C. seeks the reversal of the Board's order upholding the OOJ's affirmance of four orders of the claim administrator. First, K.C. asserts that the Board erred by affirming the OOJ's ruling that upheld the claim administrator's denial of the request to add PTSD as a compensable condition in the claim. Specifically, K.C. contends that the Board failed to implement the three-step process outlined in *Hale* for determining the compensability of a psychiatric condition. K.C. contends that the Board should have remanded the claim to the claim administrator for a compensability determination. K.C. asserts that the evaluation and report of Dr. Thistlethwaite dated June 14, 2021, satisfies the first two steps of the *Hale* protocol which are: 1) that the claimant be referred for a psychiatrist's consultation; and 2) that the psychiatrist produce a detailed report. According to K.C., the third step would be for the claim administrator, aided by Dr. Thistlethwaite's report, to rule on compensability. Although K.C. acknowledges that Dr. Thistlethwaite did not diagnose PTSD, she instead relies on Nurse Radabaugh, her long-time primary care provider, whose diagnosis of PTSD, she argues, was "highly significant" and "relevant."

K.C. also complains that when Nurse Radabaugh requested that PTSD be ruled compensable, the claim administrator did not advise her to implement the three-step process for the compensability determination. Instead, the claim administrator asked Dr.

8

Short, who is not a psychiatrist, for an opinion. Even when Dr. Short opined that a psychiatric consultation might be useful, the claim administrator declined to refer K.C.

K.C.'s second assignment of error also concerns the compensability of psychiatric conditions and can be considered with her first assignment of error. Here, she asserts that the Board committed reversible error by not remanding the claim to the claim administrator with instructions to address the compensability of all of the psychiatric conditions Dr. Thistlethwaite referenced in his report, including anxiety and depression. The Board's failure to remand the claim for a comprehensive review of all psychiatric conditions referenced by Dr. Thistlethwaite, K.C. alleges, elevates "form over substance" in violation of West Virginia Code § 23-1-1(b)(2022), which provides that it is the "intent of the Legislature that this chapter be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers" and "that workers' compensation cases shall be decided on their merits."

Also in her second assignment of error, K.C. contends that the Board's ruling runs afoul of our Supreme Court's ruling in *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022), in which the Court determined that the OOJ had "abdicated its responsibility" when it failed to consider the compensability of a diagnosis that was not listed on the diagnosis update form, but which was discussed in accompanying doctor's notes. Here, K.C. points out that Dr. Thistlethwaite diagnosed several psychiatric conditions that he determined were directly related to the compensable injury. Thus, K.C. asserts that the Board had sufficient evidence to remand the claim to the claim administrator for a compensability ruling on all psychiatric conditions addressed by Dr. Thistlethwaite, but which she admits were not included on the diagnosis update form. According to K.C., the Board deferred to "form over substance" when it suggested that she submit a specific request, via a diagnosis update form, in order to "trigger" the claim administrator's compensability ruling. K.C. contends that the Board committed reversible error by failing to remand the claim to the claim administrator for it to make rulings from diagnoses gleaned from Dr. Thistlethwaite's report. The Board's error, K.C. asserts, places her in jeopardy of further delays in receiving compensability rulings and treatment.

In another argument that she also anchors to the *Moore* decision, K.C. contends that the Board erroneously refused to adjudicate the issue of compensability of CRPS. Instead, the Board affirmed the denial of a second opinion from a pain management physician for possible CRPS and declined to address the condition's compensability. Again K.C. asserts that form was elevated over substance in violation of the *Moore* decision. K.C. maintains that the compensability of CRPS was an issue squarely before the Board, and she contends that the credible office notes and testimony of Dr. Fahim constitute a second opinion. Further, K.C. contends that the opinions of Nurse Radabaugh, Dr. Watson, and Dr. Guberman, who diagnosed CRPS, were in line with the criteria set forth in West Virginia Code of State Rules § 85-20-51 (2006). Thus, according to K.C., the Board failed to appropriately weigh the evidence that warranted the inclusion of CRPS as a compensable

9

condition in the claim. K.C. notes that the Board's reliance on the opinions of Drs. Agnew and Martin was misplaced, as neither doctor is a pain management specialist and their opinions were based on a single evaluation. Also, K.C. alleges that the opinions of Drs. Agnew, Martin, and Vaglienti overemphasized the negative bone scan, notwithstanding West Virginia Code of State Rules § 85-20-51.1 – 51.8.

In her third assignment of error, K.C. argues that the Board committed reversible error by failing to properly weigh the evidence when it affirmed the denial of permanent partial disability and physical therapy, and affirmed the termination of TTD benefits. Specifically, K.C. asserts that the Board's decision was based on the opinions of Drs. Martin and Agnew, which she argues were unreliable because they failed to diagnose CRPS or a compensable psychiatric condition. K.C. relies on *Moore* and *Wilkinson v. West Virginia Office Insurance Commissioner*, 222 W. Va. 394, 664 S.E.2d 735 (2008), for her assertion that the Board committed reversible error by failing to properly weigh the evidence. K.C. contends that the Board merely speculated that the inability of Drs. Agnew and Martin to obtain valid range of motion measurements was due to K.C.'s volition and not due to the doctors' negative bias. K.C. also asserts that Dr. Guberman's report was incorrectly found to be unreliable. Instead, K.C. contends that Dr. Guberman's opinion is consistent with the evidence regarding CRPS, and his statement regarding a spinal cord stimulator was misconstrued by the Board as a treatment recommendation.

Upon review, we find no error in the Board's affirmation of the OOJ's order. First, we find that the Board did not err when it affirmed the claim administrator's denial of the compensability of PTSD. K.C. does not so much argue that the Board should have ruled PTSD compensable. Instead, she focuses on the three-step process outlined in *Hale* and argues that the claim administrator should have been required to rule on the compensability of any and all psychiatric conditions that Dr. Thistlethwaite concluded were related to the work injury. We disagree that the claim administrator should have been ordered to issue compensability rulings for psychiatric conditions that K.C. never properly requested. The only diagnosis that K.C. requested, via a diagnosis update form, was PTSD. West Virginia Code of State Rules § 85-20-12.4.a specifically requires a diagnosis update form be filed in order to request the addition of a psychiatric condition to a claim. Contrary to the assertions of K.C., the Board's ruling did not place form over substance. Instead, the Board

followed the practical, orderly, and uncomplicated approach set forth in the *Hale* decision as well as the rules.[4] [5]

Second, we find that the Board properly affirmed the denial of a second opinion from a pain management physician for possible CRPS, and also properly declined to address the compensability of CRPS. Again, we do not agree with K.C.'s argument that the Board elevated form over substance. As noted in the OOJ's order, K.C. had seen numerous physicians regarding CRPS, and another opinion was unnecessary. The claim administrator's order that addressed CRPS was not a compensability ruling and the issue was not properly before the OOJ or Board.

Thirdly, we find that the Board did not err in upholding the following actions by the claim administrator: the award of no PPD, the denial of a request for physical therapy, and the termination of TTD benefits. Specifically, we are not persuaded by K.C.'s argument that the Board improperly found the opinions of Drs. Martin and Agnew to be reliable and the opinion of Dr. Guberman to be unreliable. K.C.'s reliance on *Wilkinson* is misplaced. In *Wilkinson*, the Court, finding that the OOJ misstated and mischaracterized some of the evidence, overturned the Board's decision (that affirmed the OOJ). *Wilkinson,* 222 W. Va. at 400, 664 S.E.2d at 741. In the present case, the OOJ's determination, as affirmed by the Board, does not misstate or mischaracterize any evidence, and the order is supported by the evidence of record. Thus, unlike in *Wilkinson*, here, the Board's order is entitled to deference.[6]

We conclude that the Board was not clearly wrong in affirming the OOJ's decision finding that the claim administrator did not err when it: 1) granted no PPD; 2) closed the claim for TTD benefits; 3) denied a request to add PTSD to the claim; 4) denied a request

---

[4] Although we note that the claim administrator's reliance on the opinions of Dr. Short and Dr. Thaxton, instead of relying on the opinion of a psychiatrist, was misplaced, the ultimate determination by Dr. Thistlethwaite, a psychiatrist, concurred with Dr. Short's and Dr. Thaxton's recommendation that PTSD was not a proper compensable diagnosis in the claim. Thus, the claim administrator's mistake did not result in reversible error.

[5] We decline to address the issue of the claim administrator's denial of a mental health evaluation for possible PTSD since K.C. did not include it as an assignment of error in the petition she filed with this Court.

[6] West Virginia Code § 23-5-12a(b) sets forth the same standard of review as was previously required of the Board when it reviewed decisions by the OOJ per West Virginia Code § 23-5-12 before the 2021 statutory amendments became effective. In considering West Virginia Code § 23-5-12, the Supreme Court of Appeals of West Virginia stated the Board was required to accord deference to the decisions by the OOJ. *See Conley v. Workers' Comp. Div.,* 199 W. Va. 196, 203, 483 S.E.2d 542, 549 (1997).

11

for a second opinion with pain management for possible CRPS; 5) and denied a request for continued physical therapy. We agree with the Board's determination that K.C. failed to establish by a preponderance of the evidence that any of the claim administrator's orders she appealed should have been reversed or that any issue should have been remanded to the claim to the claim administrator.

Finding no error in the Board's November 18, 2022, order, we affirm.

Affirmed.

**ISSUED:** November 1, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

**NOT PARTICIPATING:**

Judge Thomas E. Scarr