# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Donald Gwinn,**
**Claimant Below, Petitioner**

**v.)**    **No. 23-172**  (JCN: 2016001947)
(ICA No. 22-ICA-250)

**JP Morgan Chase,**
**Employer Below, Respondent**

**FILED**

**November 13, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Donald Gwinn appeals the February 2, 2023, memorandum decision of the Intermediate Court of Appeals of West Virginia,[1] arguing that the ICA erred in affirming previous rulings denying his request for treatment (anterior spinal fusion and physical therapy following this surgery) and corresponding temporary total disability benefits. Mr. Gwinn contends that a preponderance of the evidence demonstrates that this treatment is medically necessary and that he was temporarily and totally disabled while awaiting this treatment. His employer, JP Morgan Chase, responds that Mr. Gwinn is improperly asking this Court to reweigh the evidence.[2]

As explained below, the ICA erred in affirming the Board of Review's decision that adopted the Office of Judges' findings of fact and conclusions of law because the decision is in violation of West Virginia Code § 23-4-1g(a). When faced with conflicting medical evidence, the factfinder simply picked the opinion of the employer's examining physician over the claimant's treating physician without adequate explanation. Because the factfinder did not find the treating physician's opinion to be unreliable, the relevant evidence on the treatment issue is, at best, evenly divided. When that occurs, West Virginia Code § 23-4-1g(a) requires that the factfinder adopt the resolution that is most consistent with the claimant's position. For this reason, we reverse and remand with directions to grant Mr. Gwinn the relief he requests.

---

[1] *See Gwinn v. JP Morgan Chase*, No. 22-ICA-250, 2023 WL 1464106 (W. Va. Ct. App. Feb. 2, 2023) (memorandum decision).

[2] Mr. Gwinn is represented by counsel Lori J. Withrow and Reginald D. Henry. JP Morgan Chase is represented by counsel T. Jonathan Cook, Jane Ann Pancake, and Jeffrey B. Brannon.

1

**Factual and Procedural History**

Mr. Gwinn suffered a compensable injury on July 16, 2015, when he tripped over a doorstop, fell down several stairs, and landed on the left side of his body. The pain was so severe that he could not get up by himself. Mr. Gwinn was taken by ambulance to the emergency department at Raleigh General Hospital.

Mr. Gwinn's application for workers' compensation benefits was approved. An MRI revealed preexisting degenerative changes of his spine. Mr. Gwinn's treating physician, Rajesh V. Patel, M.D., an orthopedic surgeon, opined that Mr. Gwinn had spondylolisthesis that preexisted the compensable injury but noted that it had been asymptomatic prior to the compensable injury. Dr. Patel stated in medical reports that the injury worsened Mr. Gwinn's spondylolisthesis, causing symptoms and stenosis which accounted for left leg pain and radiculopathy. The claim administrator held the claim compensable for left ankle sprain, left knee sprain, left hip sprain, left wrist sprain, unspecified head injury, a lumbar sprain/strain, radiculopathy at L5, and sciatica.[3] Initially, Dr. Patel recommended conservative treatments including injections, physical therapy, and a weight loss regimen. After Mr. Gwinn reported worsening pain in November 2017, Dr. Patel stated that surgery may be necessary; he requested authorization for another MRI.

Dr. Patel reported that a January 2018 MRI revealed spondylolisthesis with neural foraminal narrowing that would require surgery at some point, and he submitted a request for authorization. Mr. Gwinn also sought additional temporary total disability benefits for November 9, 2020, to January 29, 2021, when Dr. Patel took him off work in anticipation of the requested surgery. In November 2020, the claim administrator denied authorization for an anterior spinal fusion, finding that it was not necessary to treat the compensable injury.[4] In January 2021, the claim administrator similarly denied authorization for the physical therapy meant to follow the requested surgery and denied the request for additional temporary total disability benefits based on the October 2020 finding of Prasadarao B. Mukkamala, M.D., that Mr. Gwinn was at maximum medical improvement.

In June 2021, Dr. Patel authored a clinical note reiterating that Mr. Gwinn's spondylolisthesis preexisted the compensable injury but that the fall caused the spondylolisthesis to become symptomatic. While conservative treatments were initially recommended, Dr. Patel

---

[3] *See* Syl. Pt. 4, *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022) ("'A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.'" (quoting Syl. Pt. 3, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016)).

[4] When rejecting Mr. Gwinn's request for surgery, the claims examiner did not list all the approved diagnoses; she listed only lumbar sprain and lumbar spasm.

stated the lumbar fusion surgery at L5-S1 was medically necessary and reasonably related to the compensable injury as Mr. Gwinn continued to have severe limitations in his lower back and left leg, which he experienced since the injury. Dr. Patel stated that the requested surgery would treat the claimant's radiculopathy that resulted because his spondylolisthesis and spondylolysis became symptomatic due to the compensable injury.

The employer submitted the medical report of Chuan Fang Jin, M.D., an Associate Professor with West Virginia University's Department of Occupational Medicine, who evaluated Mr. Gwinn in September 2021. Dr. Jin diagnosed Mr. Gwinn with chronic low back pain with a sprain-type injury of the lumbar spine superimposed on preexisting degenerative lumbar spine disease with preexisting spondylolisthesis at left L5 over S1. She stated that the underlying pathology for the radiculopathy and sciatica were preexisting degenerative conditions, including spondylolisthesis. Dr. Jin opined that the compensable injury did not cause the spondylolisthesis but stated that it could have triggered the radiculopathy symptoms. She stated that a one-time fall would not cause or accelerate the degenerative process or aggravate or alter the underlying pathologies. Dr. Jin stated that she believed that Mr. Gwinn's worsening symptoms were the result of the natural progression of the preexisting conditions.

In June 2022, the Office of Judges affirmed the claim administrator's orders which denied the requested surgery, physical therapy, and additional temporary total disability benefits. After reciting the medical findings in Drs. Patel's and Jin's reports, the Administrative Law Judge found Dr. Jin's report to be "reliable," but she did not discredit Dr. Patel's reports as unreliable or state that his opinion was less credible than Dr. Jin's. The ALJ noted that while radiculopathy was included as a compensable condition in the claim, she concluded that the requested surgery would treat Mr. Gwinn's preexisting degenerative conditions and spondylolisthesis, echoing Dr. Jin's report. When addressing the issue of temporary total disability, the ALJ noted that Dr. Mukkamala placed Mr. Gwinn at maximum medical improvement. She concluded that the additional temporary total disability benefits requested were for the period while Mr. Gwinn was awaiting surgery, which was found not to be medically necessary to treat the compensable injury.

The Board of Review adopted the Office of Judges' findings and affirmed its order in October 2022. The ICA affirmed the Board of Review's decision and stated:

> Here, both Dr. Patel and Dr. Jin agreed that Mr. Gwinn had preexisting conditions that predated the compensable injury. While Dr. Patel believed that Mr. Gwinn's symptoms were attributable to compensation conditions in the claim, Dr. Jin opined that the symptoms were ultimately attributable to preexisting conditions and their natural progression, which were not aggravated by a one-time fall. As such, Dr. Jin opined that any treatment requested by Dr. Patel was aimed at treating noncompensable conditions, and the [Office of Judges] and the Board [of Review] agreed with her assessment. Credibility determinations are exclusively reserved for the trier of fact.

The ICA found no reason to disturb the "reliance upon the report of Dr. Jin over that of Dr. Patel[,]" with regard to the treatment issue. It also found no error in the Board of Review's order

denying Mr. Gwinn's request for additional temporary total disability benefits, noting that he "was taken off of work in anticipation of the requested surgery, which was found to be neither medically necessary nor reasonable related to the compensable conditions." Mr. Gwinn now appeals the order of the ICA.

## Standard of Review

"Under a preponderance of the evidence standard, the trier of fact is tasked with the duty of weighing the quality of the evidence to arrive at a decision that is supported by the record taken as a whole."[5] This Court reviews questions of law de novo, while we accord deference to the lower tribunal's findings of fact unless the findings are clearly wrong.[6]

## Analysis

Simply stated, the parties dispute whether the treatment requested by Mr. Gwinn, and corresponding temporary total disability benefits, relate to the compensable diagnosis of this claim or to the noncompensable preexisting conditions. They submitted medical opinions in support of their respective positions and the ALJ selected the opinion of the employer's physician when rendering her decision. We recognize that "[a]s decision-making goes, the factfinder in a workers' compensation case is the ALJ or hearing examiner—not this Court."[7] The question before us is whether the ICA erred in affirming the Board of Review's decision that adopted the findings and

---

[5] *Ramaco Res., Inc. v. Rollins*, No. 19-1163, 2021 WL 5216712, at *4 (W. Va. Nov. 9, 2021) (memorandum decision).

[6] *See* Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, __ W. Va. __, 905 S.E.2d 528 (2024) ("On appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed *de novo*, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong.").

[7] *Hood v. Lincare Holdings, Inc.,* 249 W. Va. 108, 115, 894 S.E.2d 890, 897 (2023). The Board of Review assumed the role of factfinder in workers' compensation cases on July 1, 2022. W. Va. Code § 23-5-8a(a). Mr. Gwinn's appeal of the Office of Judges' decision was at the Board of Review on June 30, 2022, when the workers' compensation system underwent this significant restructuring. The Legislature directed that the Board of Review was responsible for deciding this and "all remaining appeals filed with the Board of Review, of Office of Judges' decisions issued prior to June 30, 2022[.]" W. Va. Code § 23-5-8b(e). The order entered by the Board of Review was then appealed to the ICA, which under West Virginia Code § 23-5-8b(d)(2), has exclusive jurisdiction over all final orders or decisions issued by the Board of Review after June 30, 2022. W. Va. Code § 23-5-15(a).

4

conclusions of the Workers' Compensation ALJ. Resolution of that question turns on whether the ALJ properly weighed the medical evidence as required by statute.

Mr. Gwinn argues that the preponderance of the evidence shows that the requested surgery and follow-up physical therapy are medically necessary and reasonably related to the compensable injury. Mr. Gwinn states that his treating physician, Dr. Patel, devised a treatment plan that involved conservative treatments as a starting point and surgery, if necessary. Because the Office of Judges approved the injections, he argues that the surgery and follow-up physical therapy should have been approved as the next step in his treatment plan. And given his symptoms, Mr. Gwinn states that Dr. Patel advised him to stop working in anticipation of the surgery which entitles him to additional temporary total disability benefits. JP Morgan Chase responds that the requested treatment was properly denied because as Dr. Jin explained, it relates to the noncompensable preexisting conditions. For this reason, JP Morgan Chase contends that Mr. Gwinn is not entitled to additional temporary total disability benefits.

West Virginia Code § 23-4-1g(a) states, in part, that, "resolution of any issue raised in administering this chapter shall be based on a weighing of all evidence pertaining to the issue and a finding that a preponderance of the evidence supports the chosen manner of resolution." The statute goes on to provide that,

> [t]he process of weighing evidence shall include, but not be limited to, an assessment of the relevance, credibility, materiality and reliability that the evidence possesses in the context of the issue presented. Under no circumstances will an issue be resolved by allowing certain evidence to be dispositive simply because it is reliable and is most favorable to a party's interests or position. If, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted.[8]

The factfinder in a workers' compensation case is thus vested with the statutory responsibility to weigh the conflicting medical opinions in terms of "relevance, credibility, materiality and reliability . . . in the context of the issue presented."[9] West Virginia Code § 23-4-1g(a) provides a default rule that states when a factfinder is presented with evidence of equal evidentiary weight, she must adopt "the resolution that is most consistent with the claimant's position[.]" When confronted with conflicting medical opinions, the factfinder must consider the entire record, clarify inconsistencies, and adequately explain her reasons for choosing one medical opinion over the other. A factfinder cannot resolve the discrepancy between medical opinions with a mere announcement that one expert is reliable; she must provide some articulation for *why* that expert's opinion was selected, including an explanation of why that opinion was selected over

---

[8] W. Va. Code § 23-4-1g(a).

[9] *Id.*

5

another. The failure to do so raises due process concerns because parties to an adjudicatory proceeding are entitled to a well-reasoned decision.[10]

Turning to the specifics of this case, the ALJ was faced with a classic battle of expert witnesses. Mr. Gwinn submitted several reports from his treating physician, Dr. Patel, who stated that the requested treatment is medically necessary to treat the compensable condition. On the other hand, JP Morgan Chase submitted the medical report of Dr. Jin who stated that the requested treatment is for the preexisting degenerative lumbar spine disease that is not causally related to the compensable injury. While the ALJ recited the medical evidence to an extensive degree and found Dr. Jin's report to be "reliable," she did not discredit Dr. Patel's medical opinion. Indeed, she provided no explanation for why she selected the opinion of the employer's examining physician over the claimant's treating physician when rendering her decision. So, the ICA was mistaken when it stated that the ALJ's "credibility" determinations were entitled to deference because she made none. The ALJ articulated no weighing of the relevance, credibility, materiality and/or reliability of the evidence in the context of the issues presented.

As this Court stated in *Wilkinson v. West Virginia Office of the Insurance Commissioner*,[11] West Virginia Code § 23-4-1g(a) does not permit the report of one physician "to be deemed unreliable and essentially ignored simply because it contradicts the report of another physician."[12] In *Wilkinson*, this Court reversed the final order of the Board of Review that rejected the claimant's request to add major depression and pain disorder as compensable components in the claim. When remanding the case and granting the claimant relief in *Wilkinson*, we held that the Board of Review erred when affirming the decision of the Office of Judges because it was improper and contrary to the applicable law; we stated that the factfinder "clearly allowed the recommendation of the [Office of Medical Management] to be dispositive[,]" without adequate explanation, which is not permitted by West Virginia Code § 23-4-1g(a).[13]

Consistent with *Wilkinson*, we find that the Office of Judges' decision is contrary to statute. In the absence of any reason to discredit the medical opinion of Dr. Patel, the evidence relevant to the requested treatment is, at best, evenly divided. So, the resolution that is most consistent with the claimant's position should have been adopted by the factfinder under West Virginia Code §

---

[10] *See, e.g.*, David B. Torrey, *Master or Chancellor? The Workers' Compensation Judge and Adjudicatory Power*, 32 J. Nat'l Ass'n Admin. L. Judiciary 21, 177-78 (2012) ("In the present day, due process is the animating force that demands that administrative law adjudicators provide reasons for their decisions.") (footnotes and quotation marks omitted).

[11] 222 W. Va. 394, 664 S.E.2d 735 (2008).

[12] *Id*. at 401, 664 S.E.2d at 742.

[13] *Id*. In *Wilkinson*, we also criticized the decision of the Office of Judges for misstating and mischaracterizing parts of the evidentiary record. *Id*. at 400, 664 S.E.2d 741. In the case before us, the ALJ did not mischaracterize the medical evidence.

23-4-1g(a). For this reason, the ICA erred when it affirmed the Board of Review's order that adopted the findings of fact and conclusions of law of the Office of Judges because that decision was in violation of statutory provisions.[14]

### Conclusion

The decision of the ICA is reversed, and this case is remanded to the Board of Review with directions to grant Mr. Gwinn's request for anterior spinal fusion and for physical therapy following the surgery, as well as temporary total disability benefits as supported by proper medical evidence.

Reversed and
remanded.

**ISSUED:** November 13, 2024

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**CONCURRING IN PART AND DISSENTING IN PART:**

Justice C. Haley Bunn

**DISSENTING:**

Chief Justice Tim Armstead

---

[14] *See* Syl. Pt. 2, *Duff*, __ W. Va. __, 905 S.E.2d 528 ("Upon judicial review of an appeal of a decision of the West Virginia Board of Review to the Intermediate Court of Appeals of West Virginia, under West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022): The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are: (1) In violation of statutory provisions; (2) In excess of the statutory authority or jurisdiction of the Board of Review; (3) Made upon unlawful procedures; (4) Affected by other error of law; (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.").

**BUNN, Justice, concurring in part and dissenting in part:**

I agree with the majority's conclusion that the Intermediate Court of Appeals erred by affirming a Board of Review ("BOR") order that adopted a flawed decision by the Office of Judges ("OOJ"). However, I depart from my colleagues' decision to grant Mr. Gwinn the temporary total disability ("TTD") benefits, surgery, and physical therapy he requested below. The Court should have vacated the BOR's order and remanded this case with instructions to enter an order containing specific findings and conclusions that reflect the BOR's assessment of the relevant medical evidence as required by West Virginia Code § 23-4-1g(a).

As reflected in the majority opinion, the claims administrator held Mr. Gwinn's claim compensable for sciatica[15] and radiculopathy.[16] The issue in this case is whether the surgery, physical therapy, and corresponding TTD benefits Mr. Gwinn seeks are "reasonably necessary and medically related treatment" for his compensable injury. *Carter v. GW Noble Trucking, LLC*, No. 22-0114, 2024 WL 693056, at *4 (W. Va. Feb. 20, 2024) (memorandum decision) (citing W. Va. Code § 23-4-3, W. Va. C.S.R. § 85-20-9.1) (observing that workers' compensation statute and regulations require reasonably necessary and medically related treatment for a claimant's compensable injury). The evidence submitted below on this issue included reports from Mr. Gwinn's treating physician, Dr. Patel, who opined that the requested surgery and physical therapy are medically necessary to treat Mr. Gwinn's compensable sciatica and radiculopathy. The evidence also included a report from Dr. Jin, who evaluated Mr. Gwinn on behalf of the employer. Dr. Jin opined that Mr. Gwinn's preexisting degenerative lumbar spine disease and spondylolisthesis[17] are the true targets of the treatment Mr. Gwinn requests.

To decide this issue, the OOJ had to weigh "all evidence pertaining to the issue" and find "that a preponderance of the evidence supports the chosen manner of resolution." W. Va. Code § 23-4-1g(a). Importantly, "The process of weighing evidence *shall* include . . . an assessment of the relevance, credibility, materiality and reliability that the evidence possesses in the context of the issue presented." *Id.* (emphasis added). Use of the word "shall" in this requirement denotes that this assessment is mandatory. *See* Syl. pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."). *See also Wilkinson v. W. Va. Off. Ins. Comm'n*, 222 W. Va. 394, 401, 664 S.E.2d 735, 742 (2008) (per curiam) (acknowledging that "W. Va. Code § 23-4-1g(a) clearly requires evidence to be assessed in terms of relevance, credibility, materiality, and reliability").

---

[15] Sciatica is "an inflammation of the sciatic nerve, usually marked by pain and tenderness along the course of the nerve through the thigh and leg." *Sciatica*, *Mosby's Medical Dictionary* (9th ed. 2013).

[16] Radiculopathy is "a disease involving a spinal nerve root." *Radiculopathy*, *id.*

[17] Spondylolisthesis is "the partial forward dislocation of one vertebra over the one below it." *Spondylolisthesis*, *id.* The parties do not dispute that Mr. Gwinn's spondylolisthesis is a preexisting degenerative condition.

The OOJ's order contained no findings or conclusions related to its assessment of the relevance, credibility, materiality, and reliability of Dr. Patel's and Dr. Jin's reports. The OOJ simply stated without explanation that it found Dr. Jin's report to be "reliable." However, West Virginia Code § 23-4-1g(a) "does not permit the report of one physician . . . to be deemed unreliable and essentially ignored simply because it contradicts the report of another physician." *Wilkinson* 222 W. Va. at 401, 664 S.E.2d at 742. *See also* W. Va. Code § 23-4-1g(a) (declaring that "Under no circumstances will an issue be resolved by allowing certain evidence to be dispositive simply because it is reliable and is most favorable to a party's interests or position").

Based upon the OOJ's inadequate findings and failure to properly assess the medical reports submitted in relation to Mr. Gwinn's request for surgery and related benefits, the majority erroneously leapt to the conclusion that it must adopt Dr. Patel's opinion, which is "most consistent with the claimant's position," and the evidence "is, *at best*, evenly divided." Maj. Dec. at 6 (emphasis added) (citing W. Va. Code § 23-4-1g(a)). Pursuant to West Virginia § 23-4-1g(a), the factfinder may adopt the evidence that is "most consistent with the claimant's position" only if "after weighing all of the evidence regarding an issue in which a claimant has an interest, *there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution.*" (Emphasis added). This is a mandatory prerequisite, and the OOJ made no such finding. Therefore, by deciding that it must adopt Dr. Patel's opinion pursuant to West Virginia Code § 23-4-1g(a), the majority stepped into the role of factfinder and engaged in weighing the technical medical evidence.

In workers' compensation appeals, we give deference to findings of fact unless they are clearly wrong. *See*, Syl. pt. 3, in part, *Duff v. Kanawha Cnty. Comm'n*, ___ W. Va. ___, 905 S.E.2d 528 (2024). *See also* W. Va. Code § 23-5-15(c) (establishing that our review of a BOR decision gives deference to the BOR's factual findings). As I explained in my separate opinion in *Duff,* "I believe the spirit of this deferential standard retains the long established role of this Court when reviewing evidence in a workers' compensation appeal: 'The [C]ourt may not conduct a de novo reweighing of the evidentiary record.'" *Duff*, ___ W. Va. at ___, 905 S.E.2d at 549 (Bunn, J., concurring in part and dissenting in part) (quoting *Delbert v. Murray Am. Energy, Inc.*, 247 W Va. 367, 371, 880 S.E.2d 89, 93 (2022)) (additional quotations and citation omitted); s*ee also Hood v. Lincare Holdings, Inc.*, 249 W. Va. 108, 115, 894 S.E.2d 890, 897 (2023) ("[T]he factfinder in a workers compensation case is . . . not this Court.").

Furthermore, we have determined that this Court "is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b)." Syl. pt. 3, in part, *Duff*, ___ W. Va. ___, 905 S.E.2d 528. Pursuant to West Virginia Code § 23-5-12a(b), we may "make such disposition of the case" as we "determine[] to be appropriate," including "remand[ing] the case for further proceedings," and "vacat[ing] . . . [a] decision of the [BOR] if the substantial rights of the petitioner . . . have been prejudiced because the [BOR]'s findings are: (1) In violation of statutory provisions." Here, the BOR adopted an OOJ decision that failed to comply with West Virginia Code § 23-4-1g(a)'s mandate to weigh "all evidence pertaining to the issue" and assess that evidence against specific criteria "in the context of the issue presented." Rather than simply substituting its judgment for that of the BOR, the majority should have vacated the BOR's decision and remanded this case with instructions directing the BOR to conduct a proper weighing of the

medical evidence, and to issue an order with specific findings and conclusions that reflect the BOR's "assessment of the relevance, credibility, materiality and reliability that the evidence possesses in the context of" the surgery, physical therapy, and TTD benefits Mr. Gwinn requests. W. Va. Code § 23-4-1g(a). Only by conducting a proper assessment of the medical evidence can the BOR determine whether "an equal amount of evidentiary weight exists favoring conflicting" views of whether the benefits Mr. Gwinn seeks are reasonably necessary for and medically related to his compensable injury. *Id. See also Carter*, No. 22-0114, 2024 WL 693056, at *4.

Mr. Gwinn and JP Morgan Chase are both entitled to a well-reasoned decision. Vacating the BOR's decision and remanding this case could have afforded them one. Accordingly, I respectfully concur in part and dissent in part.

**ARMSTEAD, Chief Justice, dissenting:**

Contrary to the majority, I believe the Office of Judges ("OOJ") made sufficient findings to support its conclusion that the requested surgery was not medically necessary and reasonably required to treat a compensable injury in this workers' compensation claim. The record shows that it was more than five years after the claimant's workplace injury when his treating physician, Dr. Patel, sought authorization for lumbar fusion surgery at L5-S1, along with follow-up physical therapy, and temporary total disability benefits for a certain period before and after the requested surgery. The claim administrator initially denied the request as not medically necessary to treat a compensable injury. The claimant protested, and upon review, the OOJ found that the claim administrator had not erred as the medical evidence established that the purpose of the requested surgery was to address the claimant's spondylolisthesis, a condition which indisputably pre-existed the claimant's workplace injury and, critically, a condition that was never held compensable in this claim. On appeal, both the Board of Review ("BOR") and the Intermediate Court of Appeals of West Virginia ("ICA") found that the OOJ's decision was supported by the medical evidence in the claim and upheld the decision.

In finding that the requested surgery was required to treat the claimant's pre-existing spondylolisthesis and not a compensable condition in the claim, the OOJ relied upon the report of Dr. Jin, who explained:

> Because the injury incident is, at its maximum, a symptom trigger to sciatica and radiculopathy, not an etiological cause, the fall injury would not like [sic] to cause pathological change. A mechanical fall will not cause or accelerate the degenerative process. A one-time trauma with sprain/strain type soft tissue injury does not aggravate or alter the underlying pathologies. His chronic and worsening symptoms are the direct result of the disease progression of preexisting conditions. Degenerative lumbar spine disease is a well-known progressive and ongoing pathology. Worsening and chronic symptoms are common. In addition, spondylolisthesis can be progressive. His multiple MRIs have demonstrated worsening spondylolisthesis and degenerative changes in the lumbar spine, which evidently is unrelated to his fall in this claim.

Having said that, it is not too hard to understand that the treatments that Dr. Patel is requesting, including injections, therapy and surgery, are for the pre-existing degenerative lumbar spine disease and spondylolisthesis that are not caused or causally related to his reported injury of the claim. The reason and rationale requiring for [sic] surgery is due to worsening symptoms due to progress of the pre-existing degenerative disease. Evidently, degenerative lumbar disease, and pars defect related spondylolisthesis are not the result of the injury of this claim. It is logical and medically reasonable to treat the radicular symtoms or radiculpathy because his fall injury might have made some contribution to symptom manifestation as a trigger, instead of a cause. However, it is not logical and not medically reasonable to treat continuing progression of pre-existing pathology. A one-time fall does not cause degeneration. A man can have acute back pain after a fall, though only an individual can have chronic pain when he or she has prexisting chronic pathology, such as degenerative spine disease. Otherwise, acute back pain after a fall is expected to heal within a few weeks naturally.

The OOJ also considered Dr. Patel's reports wherein he acknowledged that the claimant's spondylolisthesis pre-existed the claimant's workplace injury, noting that in his January 2018 report, even "Dr. Patel indicated that the spondylolisthesis with neural foraminal narrowing would require surgery at some point."

Given this evidence, I disagree with the majority's conclusion that this was a "classic battle of expert witnesses," requiring a ruling in favor of the claimant in accordance with West Virginia Code § 23-4-1g(a) (2003). Rather, this was an instance where, as the OOJ found, "the claimant did not prove by a preponderance of the evidence that the surgery requested by Dr. Patel was medically related and reasonably required treatment for the compensable injuries in the claim." This finding was not "clearly wrong in view of the reliable, probative, and substantive evidence on the whole record." W. Va. Code § 23-5-12a(b)(5) (2022). As such, the OOJ's decision was affirmed by the BOR and then the ICA, and this Court's standard of review mandated the same result. *See* syl. pt. 3, *Duff v. Kanawha Co. Comm'n*, ____W. Va. ____, 905 S.E.2d 528 (2024) ("On appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed de novo, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong."). Accordingly, I dissent to the majority's decision in this case.

11