664 S.E.2d 735

**Llewellyn M. WILKINSON, Appellant**

**v.**

**WEST VIRGINIA OFFICE INSURANCE COMMISSION and Putnam County Board of Education, Appellees.**

**No. 33672.**

Supreme Court of Appeals of West Virginia.

Submitted April 2, 2008.

Decided June 23, 2008.

G. Patrick Jacobs, Esq., The Law Office of G. Patrick Jacobs, L.C., Charleston, WV, for Llewellyn M. Wilkinson.

Darrell V. McGraw, Jr., Esq., Attorney General, Barbara H. Allen, Esq., Managing Deputy Attorney General, and Anna L. Faulkner, Esq., Workers' Compensation Litigation Division, Charleston, WV, for WV Office Insurance Commission.

PER CURIAM.

Llewellyn M. Wilkinson, the appellant and claimant below (hereinafter "claimant"), appeals a final order of the Workers' Compensation Board of Review (hereinafter "BOR") dated August 21, 2006. In that order, the BOR affirmed a decision of the Workers' Compensation Office of Judges (hereinafter "OOJ") denying the compensability of the claimant's psychiatric condition. In this appeal, the claimant contends that she has major depression and a pain disorder as a result of the injury she suffered on April 11, 1997, and therefore, her psychiatric condition should be held compensable.

This Court has before it the petition for appeal, the designated record, and the briefs and arguments of counsel. For the reasons set forth below, the decision of the BOR is reversed.

## I.

## FACTS

The claimant was employed by the Putnam County Board of Education as head cook at Scott Teays Elementary School on April 11, 1997, when she suffered a left ankle injury. The claimant's injury occurred when four frozen turkeys fell out of a freezer onto her left foot. Thereafter, the claimant filed a workers' compensation claim which was held compensable for two conditions: sprain/strain of the ankle and contusion of the ankle.

In September 2003, the claimant's treating physician, David L. Caraway, M.D., requested authorization for the claimant to undergo a psychological evaluation by William B. Webb, Ph.D.,[1] at Oasis Behavioral Health Services. The request was granted, and subsequently, Dr. Webb reported that the claimant had major depression and a pain disorder. Dr. Webb suggested individual psychotherapy and requested authorization for the same from the Workers' Compensation Commission[2] on March 11, 2004. The request was reviewed by the Workers' Compensation Office of Medical Management (hereinafter "OMM") on July 6, 2004. The OMM concluded that there was no justification for adding a psychiatric condition as a compensable component of the claim and recommended that the request for psychotherapy be denied. The OMM noted that the claimant had suffered a heart attack requiring surgery in 2003 and that it is common for a depressive disorder to develop after open heart surgery.

On September 1, 2004, Dr. Webb filed a diagnosis update form on behalf of the claimant again stating that she was suffering from depression and a pain disorder. Based on the OMM's review, the Commission denied the claimant's request to add a psychiatric condition as a compensable component of her claim by order dated September 20, 2004. The claimant then filed a protest.

In support of her protest, the claimant submitted treatment records from Dr. Caraway dated July 2, 2003 through May 12, 2004, which indicated that she was suffering from a pain disorder. In addition, the claimant submitted the testimony of Dr. Caraway from his deposition on March 7, 2005, wherein he stated that the claimant began suffering from depression in mid 2003. The claimant also submitted the deposition testimony of Dr. Webb dated March 16, 2005. Dr. Webb testified that the claimant's injury and combination of events after her injury resulted in her developing post-traumatic depression. Finally, the claimant presented her own deposition testimony from March 16, 2005. She testified that she had no depressive episodes until after her injury. She also stated that her depression began about a year after she was injured.

---

1. Dr. Webb is a psychotherapist.

2. Pursuant to W. Va.Code §§ 23–2C–1 to –24, the Workers' Compensation Commission was abolished on January 1, 2006, and was succeeded by BrickStreet Mutual Insurance Company, a private employer mutual insurance company. All workers' compensation claims with dates of injury or last exposure before July 1, 2005, are payable from what is statutorily referred to as the "Old Fund" which is regulated by the Insurance Commissioner, the real party-in-interest here. The use of "Commission" in this opinion refers to both the predecessor, the Workers' Compensation Commission, and the successor, the Insurance Commissioner.

The claimant was referred to Dr. Ralph Smith, a psychiatrist, by the Commission for evaluation. In a report dated May 5, 2005, Dr. Smith opined that the claimant did not have a major depressive disorder. He did advise, however, that the claimant had a pain disorder that could be attributable to her April 11, 1997, injury.

By order dated September 7, 2005, the OOJ affirmed the Commission's order of September 20, 2004, denying the compensability of the claimant's psychiatric condition. The OOJ's order stated, in pertinent part:

> The claimant has failed to submit evidence to establish that her psychiatric condition of a major depressive disorder and a pain disorder are causally connected to the claimant's injury of April 11, 1997. The evidence of record was subsequent to the claimant's open heart surgery. The records of Dr. Caraway and Dr. Webb clearly indicate that the claimant developed a depressive disorder and a pain disorder; however, neither doctor discussed this matter in relationship to the claimant's open heart surgery in 2003. The OM[M] review indicated that depression is a common symptom of open heart surgery. There is no evidence in this claim to contradict that finding. Significant weight is placed upon the OM[M] review of the evidence, as well as the report of Dr. Smith who indicated that the claimant did not have a major depressive diagnosis. Although Dr. Smith indicated that there was an affective disorder due to the claimant's pain there was no discussion in the claimant's history that she had open heart surgery. Therefore, the claimant has failed to eliminate an independent intervening cause in her development of her alleged depressive disorder and pain disorder. Without consideration of this Dr. Smith would have no basis to conclude whether or not the claimant's pain disorder was attributable to her injury. No weight is placed upon the findings of Dr. Webb or Dr. Caraway and their conclusions that the claimant has a major depressive disorder,

for this is clearly disputed in the report of Dr. Smith, who indicated that there is no major depressive disorder present in the claimant. Therefore, it is determined that the claimant has supplied no evidence to establish a causal relationship between her April 11, 1997, injury and her psychiatric sequela. If anything, the evidence of record establishes that the claimant developed her depressive disorder after her open heart surgery, which would clearly be an independent intervening cause.

The claimant appealed the OOJ's decision to the BOR. By order entered August 21, 2005, the BOR adopted the findings and conclusions of the OOJ and affirmed its decision. This appeal followed.

## II.

### STANDARD OF REVIEW

W.Va.Code § 23–5–15 (2003)[3] sets forth the standard of review for a workers' compensation appeal before this Court as follows:

> (b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions, in accordance with subsections (c) and (d) of this section.

> (c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the supreme court of appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record. If the court reverses or modifies a decision of the board pursuant to this subsection, it shall state

---

3. The 2003 version of W.Va.Code § 23–5–15 applies to this case pursuant to this Court's decision in *Wampler Foods, Inc. v. Workers' Compensation Division*, 216 W.Va. 129, 602 S.E.2d 805 (2004). We note that this statute was amended in 2005; however, the subsections quoted herein were not altered.

with specificity the basis for the reversal or modification and the manner in which the decision of the board clearly violated constitutional or statutory provisions, resulted from erroneous conclusions of law, or was based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record.

(d) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the supreme court of appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo re-weighing of the evidentiary record. If the court reverses or modifies a decision of the board pursuant to this subsection, it shall state with specificity the basis for the reversal or modification and the manner in which the decision of the board clearly violated constitutional or statutory provisions, resulted from erroneous conclusions of law, or was so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision.

In this case, our review is guided by subsection (c) of W.Va.Code § 23–5–15 because the BOR affirmed a prior ruling of the Commission and the OOJ. Accordingly, with this standard in mind, we now consider the issue presented in this case.

## III.

## DISCUSSION

We begin our discussion by first noting that approximately one week before this case was scheduled for oral argument, the Commission, through its claims management service, entered an order holding this claim compensable for major depression and a pain disorder. Thereafter, the Commission filed a motion to dismiss this case as moot. By order entered on March 31, 2008, this Court refused the motion to dismiss. We did so because we believe the issue presented in this case is capable of repetition and therefore, needs to be addressed.

 Long ago, this Court held in Syllabus Point 1 of *State ex rel. Lilly v. Carter,* 63 W.Va. 684, 60 S.E. 873 (1908), that "[m]oot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court." However, this Court later held that,

A case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review.

Syllabus Point 1, *State ex rel. M.C.H. v. Kinder,* 173 W.Va. 387, 317 S.E.2d 150 (1984). We have explained that,

Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

Syllabus Point 1, *Israel by Israel v. West Virginia Secondary Sch. Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989).

 Recently, in *State ex rel. Crist v. Cline,* 219 W.Va. 202, 632 S.E.2d 358 (2006), we addressed the question of when dependents' death benefits should terminate under

this State's Workers' Compensation laws even though the issue had been rendered technically moot because of action taken by the Governor's office after a writ of mandamus had been filed in this Court and a rule to show cause had been issued. We found the issue presented in that case to be one of great public interest and also subject to repetition. The same is true here. Accordingly, while technically moot, we will proceed to address the issue presented in this case which is what evidence is necessary to establish that a psychiatric condition is causally related to the compensable injury and, therefore, also a compensable component of the claim.

▆▆▆ We begin our analysis by first setting forth some basic principles of workers' compensation law. In Syllabus Point 1 of *Barnett v. State Workmen's Compensation Commissioner,* 153 W.Va. 796, 172 S.E.2d 698 (1970), this Court held that, "In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment." Also, "this Court in the past has recognized that a psychiatric disability arising out of a compensable physical injury may also be compensable." *Harper v. State Workmen's Compensation Comm'r,* 160 W.Va. 364, 366, 234 S.E.2d 779, 781 (1977). *See also Ward v. State Workmen's Compensation Comm'r,* 154 W.Va. 454, 176 S.E.2d 592 (1970); *Sisk v. State Workmen's Compensation Comm'r,* 153 W.Va. 461, 170 S.E.2d 20 (1969). It is well-established that, " 'A claimant in a workmen's compensation case must bear the burden of proving his claim but in doing so it is not necessary to prove to the exclusion of all else the causal connection between the injury and the employment.' Syllabus Point 2, *Sowder v. State Workmen's Compensation Commissioner,* 155 W.Va. 889, 189 S.E.2d 674 (1972)," Syllabus Point 1, *Myers v. State Workmen's Compensation Comm'r,* 160 W.Va. 766, 239 S.E.2d 124 (1977).

▆▆▆ With regard to the manner in which evidence submitted in a workers' compensation case is to be viewed, W.Va.Code § 23–4–1g(a) (2003) states that, "For all awards made on or after the effective date of the amendment and reenactment of this section during the year two thousand three, resolution of any issue raised in administering this chapter shall be based on a weighing of all evidence pertaining to the issue and a finding that a preponderance of the evidence supports the chosen manner of resolution." The statute further provides that,

> The process of weighing evidence shall include, but not be limited to, an assessment of the relevance, credibility, materiality and reliability that the evidence possesses in the context of the issue presented. Under no circumstances will an issue be resolved by allowing certain evidence to be dispositive simply because it is reliable and is most favorable to a party's interests or position. If, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted.

*Id.*

Turning now to the specifics of this case, the record shows that the claimant submitted several reports from Drs. Caraway and Webb, as well as their deposition testimony, in support of her request to have her psychiatric condition held compensable. All of this evidence indicated that she was suffering from major depression and a pain disorder as a result of her 1997 compensable ankle injury. In particular, Dr. Webb's report of March 11, 2004, stated that the claimant was suffering from major depression secondary to chronic pain from her work-related injury and a pain disorder also caused by her work-related injury. On September 1, 2004, Dr. Webb filed a diagnosis update form advising that the claimant had "severe depression with recent suicidal thoughts related to all the limitations and complications of this injury." He explained that claimant had several surgeries because of her injury that had "left her body disfigured and in chronic pain." During his deposition on March 16, 2005, Dr. Webb testified that,

I think one of the reasons it took so long for the depression to manifest was because we started with a person who had such a strong constitution to start with. So, you know—and a lot of times people have, you know, wishful thinking that they can—you know, this can't last forever, this is going to get better, the surgery will help, medicine will help, and they continue to stay in pain. It doesn't get any better. It becomes very demoralizing. And I think that's what happened in her case.

Dr. Caraway testified at his deposition on March 7, 2005, that he documented the claimant's depression in mid 2003 and began trying to get her treatment at that time. When questioned about the length of time between the claimant's injury and the onset of her depression, Dr. Caraway stated,

Well, first of all, depression goes hand-in-hand with chronic pain and disability. It's actually abnormal to not develop some degree of depression with prolonged dealing with lack of functioning and chronic pain.

This is a woman who has been promised some improvement of her pain over the years by various different procedures, but much of this did not get realized, and I think whenever this happened, it gradually made her depression worse and worse, and up until 2002/2003, I think she had developed some coping skills, but when it became clear to her that these coping skills would ultimately—

Let me rephrase that. When it became clear to her that her pain syndrome was ultimately not going to improve significantly beyond what it had been and that she would need to file for disability and not return to her previous occupation, I believe that her depressive symptoms spiraled, and it was at that time that I requested more specific and specialized help.

During her own deposition, the claimant testified that she began feeling depressed about a year after her injury and that it gradually became worse as she realized that she was not going to be able to return to work.

In contrast to the evidence submitted by the claimant, Dr. Smith, the psychiatrist who examined her at the request of the Commission, reported on May 5, 2005, that,

Ms. Wilkinson has an affective component to her chronic pain syndrome, which has been treated by Lexapro and outpatient psychological counseling. She has had only modest response to that. She had a strong somatization, which has interfered with the recovery from her illness. She has no major depression in my opinion. The affective component of her chronic pain syndrome is related to her compensable injury, in my opinion, through the chronic pain she experiences.

Having carefully reviewed the evidence in the record, we find that the claimant's psychiatric condition should have been held compensable. The decision of the OOJ, which was affirmed by the BOR, misstates and mischaracterizes particular components of the evidentiary record, is clearly the result of an erroneous conclusion of law, and is in clear violation of W.Va.Code § 23-4-1g(a). In that regard, the OOJ's decision first states that there is no evidence in the record to contradict the OMM's finding that claimant's depression resulted from her open heart surgery and not her 1997 compensable injury. This is simply not true as the claimant submitted evidence clearly indicating that her depression developed before her open heart surgery. As set forth above, the claimant's treating physician, Dr. Caraway, testified that he documented the claimant's depression in mid 2003. The record shows that the claimant did not have open heart surgery until August 2003. In addition, the claimant testified that she actually began feeling depressed about a year after her injury. Moreover, Dr. Smith, while ultimately concluding that the claimant did not have major depression, reported that the claimant's symptoms of depression began four years ago and that she had open heart surgery two years ago. In sum, there was substantial evidence in the record that the claimant's depression existed prior to her open heart surgery.

The OOJ's decision also contains material errors with regard to the content of Dr. Smith's report. In discounting Dr. Smith's conclusion that the claimant does in fact have a pain disorder attributable to her compensa-

ble ankle injury, the OOJ, referring to Dr. Smith's report, stated that there was "no discussion in the claimant's history that she had open heart surgery." Again, this is simply not true. As just discussed, Dr. Smith clearly noted that the claimant had open heart surgery. Specifically, the first sentence in his report under the heading "Past Medical History" is, "She had an open-heart surgery after a heart attack two years ago performed on an emergency basis."

In addition to mischaracterizing and misstating the evidence in the record, the OOJ's decision, which was affirmed by the BOR, was clearly the result of an erroneous conclusion of law. In that regard, the OOJ's decision implies that the claimant had the burden of proving that her depression did not result from her open heart surgery. However, that is clearly not the law pursuant to this Court's holding in Syllabus Point 1 of *Myers, supra.* In *Myers,* the Appeal Board rejected a hearing loss claim finding that the hearing loss was attributable to the claimant's age. This Court reversed that decision because the physician's report and testimony submitted by the claimant indicated that his hearing loss was bilateral in nature and consistent with the type of hearing loss observed in persons like him who were exposed to industrial noise over a long period of time. *Myers,* 160 W.Va. at 772, 239 S.E.2d at 127. This Court reiterated in *Myers* that, "[I]t is not the claimant's burden to negat[e] all possible non-occupational causes of his injury." *Id.*

■ Finally, the OOJ's decision in the case at bar, which was affirmed by the BOR, is in clear violation of W.Va.Code § 23–4–1g(a). The OOJ's decision states that, "No weight is placed upon the findings of Dr. Webb or Dr. Caraway and their conclusions that the claimant has a major depressive disorder, for this is clearly disputed in the report of Dr. Smith, who indicated that there is not a major depressive disorder present in the claimant." W.Va.Code § 23–4–1g(a) clearly requires evidence to be assessed in terms of relevance, credibility, materiality, and reliability. The statute simply does not permit the report of one physician, or in this instance, two physicians, to be deemed unreliable and essentially ignored simply because it contradicts the report of another physician.[4]

It is obvious that the decision in this case was based solely upon the recommendation of the OMM. However, the OMM's conclusion that the claimant's depression resulted from her heart surgery was merely speculation and was actually incorrect. As we demonstrated above, there was clear evidence in the record that the claimant's depression developed before her heart surgery. Furthermore, while Dr. Smith did not believe that the claimant had major depression, he did acknowledge that the claimant had a pain disorder attributable to her 1997 compensable injury. Yet, the OOJ found Dr. Smith's report unreliable because the OOJ erroneously concluded that Dr. Smith had failed to make a note of the claimant's heart surgery. Again, the OOJ relied upon the findings of the OMM to conclude that the claimant did not have a pain disorder as a result of her compensable 1997 injury. The OOJ clearly allowed the recommendation of the OMM to be dispositive in this case which is not permitted by W.Va.Code § 23–4–1g(a).

Based on all the above, we find that the decision of the OOJ which was affirmed by the BOR was improper and contrary to the applicable law. The preponderance of the evidence clearly established that claimant has major depression and a pain disorder resulting from her compensable physical injury. Therefore, her psychiatric condition should have been held compensable.

### IV.

### CONCLUSION

Accordingly, for the reasons stated, the final order of the BOR entered on August 21,

---

4. Counsel for the claimant has urged this Court to hold that the evidence submitted by a treating physician is entitled to more weight than that of a physician who examines the claimant on one occasion or who merely reviews the claimant's medical records. We decline to do so as such a holding would also be contrary to the mandate of W.Va.Code § 23–4–1g(a).

2006, is reversed.[5]

Reversed.

---

**5.** It is not necessary for us to remand this case to the Commission because, as noted previously, an order has already been entered holding the claimant's psychiatric condition compensable.