IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

No. 23-638

_____

FILED

**June 6, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CAITLIN R. WORKMAN,
Petitioner

v.

ACNR RESOURCES, INC.,
Respondent

Appeal from the Intermediate Court of Appeals
of West Virginia
Case No. 23-ICA-14

REVERSED AND REMANDED
WITH DIRECTIONS

Submitted:  March 5, 2025
Filed: June 6, 2025

J. Thomas Greene Jr., Esq.
T. Colin Greene, Esq.
Bailey, Stultz and Greene, PLLC
Charleston, West Virginia
Counsel for Petitioner

Aimee M. Stern, Esq.
Dinsmore & Shohl, LLP
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.
JUSTICE BUNN dissents and reserves the right to file a separate opinion.
JUSTICE ARMSTEAD dissents and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.    "On appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-5-12a(b) (eff. Jan. 13, 2022).  Questions of law are reviewed de novo, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong."  Syllabus Point 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

2.    "If an injured employee provides some evidence to demonstrate that a particular injury did arise from the subject industrial accident, absent evidence which to some degree of certainty attributes the injury to a cause other than the subject accident, it will be presumed to have resulted from such accident."  Syllabus Point 2, *Dunlap v. State Workmen's Comp. Comm'r*, 160 W. Va. 58, 232 S.E.2d 343 (1977).

WALKER, Justice:

Petitioner Caitlin Workman was working in a coal mine when a chain under tension snapped and its attached hook struck her right upper extremity area. Shortly after her workplace injuries were held compensable for right shoulder contusion and right back laceration, she developed symptoms including increased pain and weakness of her right arm, right grip strength deficit, and noticeable tremor. In the face of conflicting evidence offered by Ms. Workman's medical providers and an independent medical examination conducted at the request of her employer, Respondent ACNR Resources, Inc. (ACNR), the claim administrator summarily determined that Ms. Workman had achieved maximum degree of medical improvement (MMI) and suspended her temporary total disability (TTD) benefits. And in its conclusory order, the Workers' Compensation Board of Review (Board) affirmed. Ms. Workman now appeals the decision of the Intermediate Court of Appeals (ICA) affirming the Board's order, arguing that she has not reached MMI and needs additional testing and treatment. We find that the Board contravened West Virginia Code § 23-4-3(a)(1) (2005) by failing to properly consider the evidence before it and clearly erred by finding that Ms. Workman's symptoms were unrelated to the compensable injury. So, we reverse the ICA decision affirming the Board's order and remand this matter to the Board to enter an order awarding Ms. Workman TTD benefits from November 9, 2021 through April 9, 2022, and additional testing and treatment as supported by proper medical evidence.

1

# I.     FACTUAL AND PROCEDURAL BACKGROUND

Ms. Workman was working as a maintenance trainee for ACNR-at a Marshall County coal mine on November 8, 2021, when a chain under tension snapped and its attached hook struck her right upper extremity area. She was taken to Wheeling Hospital by ambulance where she presented with a right shoulder injury and was diagnosed with right shoulder contusion and back laceration. An Employees' and Physicians' Report of Injury was completed identifying the compensable diagnosis as right shoulder contusion.[1]

The next day, Ms. Workman followed up at Corporate Health in Wheeling, West Virginia, with Elizabeth Snyder, PA. Ms. Snyder noted symptoms of pain and tenderness consistent with the injury in Ms. Workman's right upper extremity (RUE) area and determined that she could not return to work. Ms. Snyder ordered Ms. Workman to follow up in six days, anticipating that she would be able to return to work at that time. By order dated November 19, 2021, the claim administrator held the claim compensable for a laceration without foreign body of the right back and contusion of the right shoulder.

Over the next month, Ms. Workman presented with complaints of weakness in her right hand, decreased grip strength in her right hand, increased pain, and shaking in the right hand. Ms. Snyder referred Ms. Workman for twenty-eight days of physical therapy and kept her off work. Although Ms. Workman experienced some improvement

---

[1] On the day she was injured, Ms. Workman was twenty-three years old.

through her physical therapy, she continued to have RUE weakness with grip strength and lifting, so on December 1, 2021, Ms. Snyder put in a request to the claim administrator for an orthopedic consultation and EMG imaging.

On December 15, 2021, Prasadarao Mukkamala, M.D. performed an independent medical evaluation of Ms. Workman. Dr. Mukkamala observed normal range of motion, motor examination, and sensory examination. But he also noted Ms. Workman's continued complaints of pain and weakness and observed a grip strength deficit of twenty pounds. And Dr. Mukkamala stated that although there was no evidence that the chain and hook penetrated Ms. Workman's scapula or thoracic cavity, it may have penetrated her infraspinatus muscle. Ultimately, Dr. Mukkamala opined that Ms. Workman had reached MMI for the compensable conditions and did not need further diagnostic studies or treatment. He also found no permanent impairment resulting from the compensable injury and opined that Ms. Workman could return to work with no restrictions.

On December 16, 2021, the claim administrator issued two orders. The first order suspended Ms. Workman's TTD benefits. The second order denied authorization for the orthopedic consultation and EMG imaging requested by Ms. Snyder. When Ms. Workman followed up with Ms. Snyder on December 22, 2021, Ms. Snyder observed that although Ms. Workman's grip strength seemed to be improving, she now reported sharp pain in her bicep. Ms. Snyder also observed a noticeable tremor in Ms. Workman's right hand and tenderness/palpation in Ms. Workman's RUE by the laceration. So, Ms. Snyder

3

resubmitted her request for an orthopedic consultation. The claim administrator denied that request on January 3, 2022.

On January 5, 2022, Ms. Workman followed up again with Ms. Snyder. Ms. Snyder noted improved range of motion and strength. She also noted that the tremor in Ms. Workman's right hand had subsided and concluded that Ms. Workman should be able to return to work after an additional two weeks of physical therapy. But when Ms. Workman returned to see Ms. Snyder on January 19, 2022, the trembling in her right hand had returned.

The claim administrator closed the claim for TTD benefits on January 20, 2022. During follow-up visits with Ms. Snyder throughout the month of February, Ms. Workman continued to report tenderness in her RUE area and a mild tremor. Ms. Snyder submitted a request to the claim administrator for nine additional physical therapy sessions, but on February 11, 2022, the claim administrator denied that request.

Because Ms. Workman continued to have symptoms of tenderness and tremor, she pursued an orthopedic referral through her private insurance. On March 3, 2022, Jeffrey Abbott, DO, an orthopedic surgeon in Wheeling, ordered an MR arthrogram to confirm his suspected diagnosis of a labral tear. The results of that imaging were largely unremarkable but did reveal "indistinctness of the middle glenohumeral ligament which should be correlated with signs of joint instability clinically." In April 2022, Ms. Workman

4

also received care from Ross Tennant, NP.  Like Ms. Snyder, Mr. Tennant observed a noticeable tremor, hypertensive right parascapular muscles, trigger points in the right traps and superior rhomboid, and weak right-hand grip as compared to her left-hand.  Mr. Tennant opined that Ms. Workman was, at that time, not at MMI.

In May 2022, Ms. Workman submitted to a deposition regarding her injury.  She explained that the injury occurred while she was repairing the coal mine's roof supports, when a connected chain broke under tension and struck her across her back.  The attached hook wrapped her from her shoulder to her side.  After that, she was taken to the emergency room where she submitted to imaging and received care for her wounds.  She testified that she received follow-up care from Ms. Snyder and other physicians, and that due to her continuing symptoms, she was not released to work until May 18, 2022 (even though her TTD benefits had been suspended on December 16, 2021).  She then explained that although she previously submitted a workers' compensation claim for an ankle injury, she had never had any injuries or issues in her RUE area before the compensable injury.

On December 14, 2022, the Board affirmed the claim administrator's orders denying authorization for the EMG imaging, MR arthrogram, additional physical therapy, and requests for an orthopedic consultation.  It concluded that,

> [a]lthough the claimant submitted evidence opinion that she remained TTD beyond the closure date due to [right upper extremity] complaints, the evidence does not indicate that the complaints are due to the current compensable

5

conditions. Thus, the evidence establishes at the time that TTD was suspended, the claimant had reached MMI from the compensable conditions and could return to work with no restrictions. Therefore, closure of the claim was proper.

The ICA affirmed that decision on September 5, 2023, finding that the Board was not clearly wrong in affirming the order closing the claims because Dr. Mukkamala placed Ms. Workman at MMI for the compensable conditions and found no indication for additional testing or treatment. In his dissenting opinion, Judge Scarr stated that the additional testing, treatment, and TTD benefits were clearly warranted "to diagnose Ms. Workman's continuing symptoms that only developed following her workplace injury."[2]

Ms. Workman now appeals that ICA decision.

## II.    STANDARD OF REVIEW

In *Duff v. Kanawha County Commission*,[3] we discussed the appropriate standard of review for appeals to this Court from the ICA's decisions involving decisions of the Board and determined that the following mixed standard of review applies:

> On appeal of a decision of the West Virginia Workers' Compensation Board of Review from the Intermediate Court of Appeals of West Virginia to the Supreme Court of Appeals of West Virginia, the Supreme Court of Appeals is bound by the statutory standards contained in West Virginia Code § 23-

---

[2] *Workman v. ACNR Res., Inc.*, No. 23-ICA-14, 2023 WL 5695437, at *4 (W. Va. Ct. App. Sep. 5, 2023) (memorandum decision) (Scarr, J., dissenting).

[3] 250 W. Va. 510, 905 S.E.2d 528 (2024).

6

5-12a(b) (eff. Jan. 13, 2022). Questions of law are reviewed de novo, while findings of fact made by the Board of Review are accorded deference unless the reviewing court believes the findings to be clearly wrong.[4]

With this standard in mind, we consider this appeal.

## III.   ANALYSIS

In her sole assignment of error, Ms. Workman asserts that the ICA erred in affirming the Board's order denying her requests for additional treatment and testing and closing her claim for TTD benefits.  She argues that the Board based its decision solely on Dr. Mukkamala's report that she was at MMI—even though he failed to provide an alternative diagnosis for her continuing RUE symptoms—without properly considering the medical opinions of her treating physicians.  For the same reasons, Ms. Workman contends that the Board erred when denying her requests for an orthopedic consultation, diagnostic imaging, and additional physical therapy sessions.

ACNR responds that the ICA committed no error in affirming the Board's decision because a preponderance of the evidence demonstrated that Ms. Workman had reached MMI, and the requested treatment was not medically related or reasonably required by her compensable injury.  In other words, the parties dispute whether the treatment and corresponding benefits requested by Ms. Workman relate to the compensable diagnosis,

---

[4] *Id*. at 513, 905 S.E.2d at 530, Syl. Pt. 3.

and whether the Board properly determined that Ms. Workman had reached MMI at the time that the claim administrator suspended those benefits on December 16, 2021.

West Virginia Code § 23-4-3(a)(1) requires that the claim administrator provide medically related and reasonably required sums for healthcare services, rehabilitation services, durable medical goods, and other supplies. And West Virginia Code § 23-4-7a (2005) limits a claimant's entitlement to TTD benefits to the time when the claimant has reached MMI, has been released to return to work, or has returned to work. The Board found that there was no evidence that Ms. Workman's continuing RUE symptoms were related to the compensable injury. It also found that Ms. Workman had reached MMI, so she was no longer entitled to TTD benefits at the time her claim had been closed. The question before this Court, then, is whether the Board properly weighed the medical evidence as required under West Virginia Code § 23-4-1g(a) (2003).

Section 23-4-1g(a) vests the factfinder in a workers' compensation case with a statutory duty "to weigh the conflicting medical opinions in terms of 'relevance, credibility, materiality and reliability . . . in the context of the issue presented.'"[5] In weighing the evidence, the factfinder is required to perform a complete analysis and "consider the entire record, clarify inconsistencies, and adequately explain her reasons for

---

[5] *Gwinn v. JP Morgan Chase*, No. 23-172, 2024 WL 4767011 (W. Va. 2024) (memorandum decision) (quoting W. Va. Code § 23-4-1g(a)).

8

choosing one medical opinion over the other."[6]  Pertinent to this appeal, "[a] factfinder cannot resolve the discrepancy between medical opinions with a mere announcement that one expert is reliable; she must provide some articulation for *why* that expert's opinion was selected, *including an explanation of why that opinion was selected over another*."[7]

Under the facts of this case, we are not persuaded that the Board met its statutory duty to meaningfully weigh the medical evidence before it.  Ms. Workman submitted medical records from Ms. Snyder, indicating that she was TTD due to the compensable injury from November 9, 2021, through April 9, 2022.  Medical records from Ms. Snyder further indicated continuing symptoms such as definite tremor, grip strength deficit, and RUE pain and weakness that got progressively worse with activity.  Ms. Workman also submitted an attending physician's report completed by Mr. Tennant who opined that Ms. Workman was not at MMI on April 13, 2022, and would not be at MMI until May 23, 2022.  Records from Mr. Tennant confirmed Ms. Workman's continuing RUE symptoms of noticeable tremor, pain, and weakness after her benefits were suspended on December 15, 2021.  Finally, Ms. Workman submitted medical records from Dr. Abbott, the orthopedic surgeon, who assessed right shoulder injury and observed decreased range of motion with pain.  Based on an MR arthrogram report of the right shoulder dated March

---

[6] *Id.* at *4.

[7] *Id*. (emphasis added).  In *Gwinn*, this Court further explained that the failure to complete a proper analysis "raises due process concerns because parties to an adjudicatory proceeding are entitled to a well-reasoned decision."  *Id*.

9

22, 2022, Dr. Abbott observed "indistinctness of the middle glenohumeral ligament which should be correlated with signs of joint instability clinically." On the other hand, ACNR submitted the medical report of Dr. Mukkamala who opined that Ms. Workman had reached MMI as of December 15, 2021, and that there was no indication for further diagnostic studies or treatments.

In its findings of fact, the Board performed a thorough recitation of the evidence submitted by the parties. In its discussion, the Board determined that "the evidence establishe[d] that at the time that TTD was suspended, [Ms. Workman] had reached MMI from the compensable conditions and could return to work with no restrictions." The Board failed to credit Dr. Mukkamala's opinion that the continuing RUE symptoms were not related to the compensable injury as more reliable or discredit any of Ms. Workman's medical evidence supporting her claim as less reliable. Instead, the Board provided no explanation to bolster its conclusory determination that Ms. Workman had reached MMI based on her compensable condition at the time that her benefits were suspended and that the requested treatments were not medically necessary and reasonably required to treat the compensable condition.

Noting that Ms. Workman's claim was held compensable for back laceration and contusion of the right shoulder, and that Dr. Mukkamala placed her at MMI for these compensable conditions at the time of his December 15, 2021 IME, the majority decision

10

of the ICA concluded that the Board was not clearly wrong.[8]  The ICA further concluded that the Board was not clearly wrong in denying Ms. Workman's requests for additional testing and treatment because (according to Dr. Mukkamala) she had reached MMI for this injury.

---

[8] As the ICA properly noted in its memorandum decision, the standard of review for workers' compensation decisions appealed to the ICA is set forth in West Virginia Code § 23-5-12a(b) (2022).  That provision mandates that the ICA shall . . .

> reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
>
> (3) Made upon unlawful procedures;
>
> (4) Affected by other error of law;
>
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 23-5-12a(b) (in part).

But the ICA failed to consider that the Board "articulated no weighing of the evidence, credibility, materiality and/or reliability of the evidence in the context of the issues presented."[9] Instead, the Board simply stated that:

> [t]he evidence indicates that the claimant's current complaints consist of weakness of the right arm that gets progressively worse with activity, weak grip strength, and tremors of the RUE. The evidence does not indicate that the complaints are the result of a laceration and a contusion.

As for the claim administrator's decision to close the claim for TTD benefits, the Board stated that:

> Based upon the compensable conditions of the claim, Dr. Mukkamala opined that the claimant had reached MMI and could return to work with no restrictions . . . .
>
> Although the claimant has submitted evidence opining that she remained TTD beyond the closure date due to RUE complaints, that evidence does not indicate that the complaints are due to the current compensable conditions. Thus, the evidence establishes that at the time that TTD was suspended, the claimant had reached MMI from the compensable conditions.

We have held that the workers' compensations statutory scheme "does not permit the report of one physician to be deemed unreliable and essentially ignored simply because it contradicts the report of another physician."[10] And when a factfinder allows one

---

[9] *Gwinn*, 2024 WL 476011, at *5.

[10] *Id.* at *5 (internal quotations and citations omitted); *see also Wilkinson v. W. Va. Off. Ins. Comm'n*, 222 W. Va. 394, 401, 664 S.E.2d 735, 742 (2008). In *Wilkinson*, the Court held that W. Va. Code § 23-4-1g(a) precludes "the report of one physician, or in [that] instance, two physicians, to be deemed unreliable and essentially ignored simply because it contradicts the report of another physician." 222 W. Va. at 401, 664 S.E.2d at 742.

12

medical recommendation to be dispositive without adequate explanation, it contravenes West Virginia Code § 23-4-1g(a)'s requirement that the factfinder perform a complete analysis in light of the evidence before it.[11]

Here, the Board clearly allowed Dr. Mukkamala's recommendation that Ms. Workman had reached MMI and that her symptoms were not related to the compensable injury to be dispositive—without explaining why it considered the reports of Ms. Workman's three treating medical professionals to be less reliable. The Board's paltry analysis contravened section 23-4-1g(a)'s evidentiary mandate. For this reason, the ICA erred when it affirmed the Board's order.

We are additionally troubled with the Board's summary conclusion that Ms. Workman's continuing RUE symptoms were not related to the compensable injury—and thus, that she had achieved MMI. This Court has held that:

> If an injured employee provides some evidence to demonstrate that a particular injury did arise from the subject industrial accident, absent evidence which to some degree of certainty attributes the injury to a cause other than the subject accident, it will be presumed to have resulted from such accident.[12]

---

[11] *Gwinn*, 2024 WL 476011, at *5.

[12] Syl. Pt. 2, *Dunlap v. State Work. Comp. Comm'r,* 160 W. Va. 58, 232 S.E.2d 343 (1977).

13

In *Dunlap*, we explained that "[t]his rule is not intended to substitute a presumption for proof. The injured employee is still required to supply evidence that his injury did result from the subject industrial accident."[13] Turning to the facts of this case, the Board specifically noted that Ms. Workman "submitted evidence opining that she remained TTD beyond the closure date due to RUE complaints" yet still concluded that the "evidence does not indicate that the complaints are due to the compensable condition." Without analysis indicating *why* it selected Dr. Mukkamala's report over Ms. Workman's evidence, the Board ignored our holding in *Dunlap*.

Critically, in his report Dr. Mukkamala noted Ms. Workman's continued complaints of pain and weakness and observed a grip strength deficit between her right and left hands—among the same symptoms observed by her three treating medical professionals. Still, he summarily concluded that those symptoms were not related to the compensable injury without any analysis to explain why this otherwise healthy twenty-three-year-old worker would develop the RUE symptoms in the absence of the compensable injury. Because there is no evidence that "attributes the injury to a cause other than"[14] the compensable injury, the Board was clearly wrong in concluding that Ms. Workman had reached MMI. More to the point, evidence submitted by Ms. Workman showed that she "continued experiencing symptoms that related to her workplace injury

_____

[13] *Id*. at 64, 232 S.E.2d at 346.

[14] *Id*. at 58, 232 S.E.2d at 343 Syl. Pt. 2, in part.

14

even after Dr. Mukkamala found she had reached MMI."[15]  So, Judge Scarr's dissenting opinion correctly concluded that "TTD benefits should not have been closed given . . . the need for continued testing to determine the source of those symptoms, and the need for continued treatment through physical therapy."[16]

Had the Board conducted a proper analysis of the medical evidence submitted by the parties, the deference accorded to its factual findings by the ICA may have been proper.  But instead, the Board essentially and impermissibly ignored the reports of Ms. Workman's treating medical professionals.  So, the Board's findings were in clear violation of the statutory mandate that the factfinder properly consider the evidence before it.[17]  And because its finding that the "evidence does not indicate that [Ms. Workman's continuing RUE symptoms] were due to the current compensable condition" is clearly wrong in view of the substantial evidence on the whole record, we reverse the decision of the ICA that affirmed the Board's order.

## IV.    CONCLUSION

For the reasons discussed above, we reverse the September 5, 2023, memorandum decision of the ICA and remand this matter to the Board of Review to enter

---

[15] *Workman*, 2023 WL 5695437, at *5 (Scarr, J., dissenting).

[16] *Id*.

[17] W. Va. Code § 23-4-1g(a).

15

an order awarding Ms. Workman TTD benefits from November 9, 2021 through April 9, 2022, and additional testing and treatment as supported by proper medical evidence.

Reversed and remanded with directions.