**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


**Dainel Nicole Smith,**
**Claimant Below, Petitioner**

**v.)**     **No. 25-214**  (JCN: 2023020064)
                    (ICA No. 24-ICA-292)

**West Virginia Parkways Authority,**
**Employer Below, Respondent**


# MEMORANDUM DECISION


Petitioner Dainel Nicole Smith appeals the January 29, 2025, memorandum decision of the Intermediate Court of Appeals of West Virginia ("ICA"). Respondent West Virginia Parkways Authority filed a timely response.[1] The issue on appeal is whether the ICA erred in reversing the June 17, 2024, decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). In its decision, the Board of Review reversed the claim administrator's August 17, 2023, order. The Board of Review also granted the claimant temporary total disability benefits from May 1, 2023, through September 15, 2023, and thereafter as substantiated by proper medical evidence. Upon our review, we determine that oral argument is unnecessary, that this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure, and that a reversal of the ICA's decision is appropriate. *See* W. Va. R. App. P. 21.

On April 24, 2023, the claimant was working as a lead housekeeper at Tamarack Marketplace, owned by the employer, when she injured her right ear. According to the record, the injury occurred when the claimant placed an earpiece in her right ear and received an electrical shock. The claimant submitted an employees' and physicians' report of occupational injury form dated April 25, 2023. Personnel at Raleigh General Hospital completed the physician's portion of the form, making a diagnosis of right tympanic membrane (eardrum) rupture.

The claimant saw David Blaine, M.D., on May 10, 2023. Dr. Blaine opined that, while there was mild hearing loss in the left ear, the claimant had severe hearing loss in the right ear. Dr. Blaine further stated that the claimant had a disorder of the right eustachian tube. Due to fluid in the right ear, Dr. Blaine found that there was a conductive air-bone gap of about forty decibels.

---

[1] The claimant appears by counsel Reginald D. Henry and Lori J. Withrow, and the employer by counsel Steven K. Wellman and James W. Heslep.

On May 12, 2023, the claim administrator held the claim compensable for a right ear injury. The claim administrator stated that temporary total disability benefits would be paid to the claimant upon receipt of medical evidence indicating the claimant's inability to work due to the compensable injury.

The claimant saw Lora Fisher, N.P., on May 18, 2023. Ms. Fisher assessed the claimant to have hearing difficulty and recommended that the claimant seek an evaluation from an audiologist. Ms. Fisher issued a work excuse, indicating that the claimant was unable to work from May 15, 2023, through May 21, 2023. On May 22, 2023, the claimant followed up with Ms. Fisher. Ms. Fisher indicated that the claimant had middle ear fluid with scarring to the right eardrum with a small bulge in the center, but noted some scarring on the left eardrum. Ms. Fisher diagnosed the claimant with right otalgia (ear pain), tinnitus of the right ear, and hearing difficulty. Ms. Fisher found that the claimant should be restricted to working without exposure to excessive noise. However, on May 24, 2023, the claimant saw Dr. Blaine, who released her to return to work without restrictions.

Joseph Touma, M.D., examined the claimant on June 23, 2023, noting that the claimant has had bilateral hearing problems since she was a child. Dr. Touma stated that an audiogram showed moderate sensorineural hearing loss (SNHL) in the left ear and moderate to severe SNHL in the right ear. The claimant experienced pain in the right ear during the testing. Dr. Touma assessed the claimant to have right otalgia, speech delay, and asymmetric SNHL. While the claimant's hearing problems were preexisting and well-documented, Dr. Touma found that the asymmetry between the ears was more pronounced following the compensable injury. Dr. Touma recommended an MRI to rule out a retrocochlear lesion. On June 26, 2023, Teresa L. Davis, an audiologist in Dr. Touma's office, wrote a letter to the claim administrator opining that the claimant's asymmetric SNHL was not work-related.

The claimant saw Joshua A. Boggs, M.D., on June 30, 2023. The claimant reported experiencing pain with loud noises and in loud environments. Dr. Boggs assessed the claimant to have right otalgia and preexisting bilateral hearing loss but found that the hearing loss in the right ear was worse following the compensable injury. Like Ms. Fisher, Dr. Boggs found that the claimant should be restricted to working without exposure to excessive noise. Therefore, Dr. Boggs indicated that the claimant was unable to work through September 15, 2023.

On August 17, 2023, the claim administrator denied the claimant temporary total disability benefits and closed the claim for such benefits. Based upon Ms. Davis's June 26, 2023, letter, the claim administrator stated that the claimant's "current condition" constituted "a personal health condition."

The claimant underwent an independent medical evaluation with David A. Phillips, M.D., on December 19, 2023. Despite the claim administrator's May 12, 2023, order holding the claim compensable, Dr. Phillips expressed doubt as to whether the claimant suffered a significant electric shock injury in the manner she described. As the claimant's bilateral SNHL was preexisting, Dr. Phillips opined that there was likely no causal connection between the bilateral SNHL and the

compensable injury. Dr. Phillips further opined that it was unlikely that the compensable injury exacerbated the claimant's right-sided eustachian tube dysfunction. While it was reasonable and appropriate to treat the right-sided eustachian tube dysfunction, Dr. Phillips found that such treatment was for a preexisting condition not related to the compensable injury. Dr. Phillips stated that the significant conductive loss noted in the right ear after the compensable injury had subsequently improved. Therefore, Dr. Phillips concluded that the claimant was at maximum medical improvement regarding the compensable injury with 0% impairment.[2] The claim administrator asked Randall L. Short, D.O., to evaluate Dr. Phillips's report. After reviewing the report, Dr. Short concurred with Dr. Phillips that the claimant's hearing loss was not related to the compensable injury.

On February 8, 2024, the claimant testified at a deposition. The claimant stated that she was not working. The claimant testified that, following the compensable injury, loud noises caused her pain. The claimant stated that, while her hearing problems were preexisting, she did not have such symptoms before the compensable injury occurred. The claimant described the pain as a sharp jabbing with a needle. The claimant stated that, although she wore hearing aids during childhood, she no longer needed them after she was fifteen or sixteen years old. When cross-examined, the claimant was not asked whether the employer offered her work without exposure to excessive noise in June 2023, and, if so, whether she refused the offer.

In an affidavit dated March 18, 2024, Debra Farley, the employer's human resources director, testified that, after the compensable injury, the claimant last worked on April 30, 2023. Ms. Farley stated that, on June 12, 2023, the employer offered the claimant work, which would not have exposed the claimant to excessive noise while on the job. Ms. Farley testified that the claimant refused the offer.

In its June 17, 2024, decision, the Board of Review reversed the claim administrator's August 17, 2023, order and granted temporary total disability benefits from May 1, 2023, through September 15, 2023, and thereafter as substantiated by proper medical evidence. In *West Virginia Parkways Authority v. Smith*, No. 24-ICA-292, 2025 WL 328220 (W. Va. Ct. App. Jan. 29, 2025) (memorandum decision), the ICA reversed the Board of Review's decision, disagreeing with the Board's assessment of the evidence. *Id.* at 4. Unlike the Board, the ICA found that the evidence showed that the claimant was not temporarily and totally disabled after June 12, 2023, when she was offered a job within her work restrictions. *Id.*

This Court reviews questions of law de novo, while we accord deference to the Board of Review's findings of fact unless the findings are clearly wrong. *See* Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024). "An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). Pursuant to West Virginia Code § 23-4-7a(e), temporary total disability benefits cease when a claimant reaches maximum medical improvement, is released to return to work, or returns to work, whichever occurs first.

---

[2] Permanent partial disability benefits are not at issue in this appeal.

On appeal, the claimant argues that the Board of Review's decision, reversing the claim administrator's order and granting temporary total disability benefits from May 1, 2023, through September 15, 2023, and thereafter as substantiated by proper medical evidence, was supported by the evidence on the record. Therefore, the claimant argues that the ICA erred in reversing the Board of Review's decision as the ICA did not have any reason to disturb the Board's decision. The employer counters that the claimant was released to return to work with the restriction that she could not be exposed to excessive noise, and the employer offered the claimant work consistent with that restriction.[3] We agree with the claimant.

West Virginia Code § 23-4-7a(e) initially provides that temporary total disability benefits terminate when a claimant reaches maximum medical improvement. In this case, the Board of Review found Dr. Phillips's assessment, that the claimant was at maximum medical improvement, to be unpersuasive.[4] The ICA did not disturb that finding, observing that the Board "relied on the fact that [the claimant] had not been found to be at [maximum medical improvement] to determine that she continued to be temporarily and totally disabled." *Smith*, 2025 WL 328220, at *4. Pursuant to *Guthrie*, the ICA was correct not to disturb the Board's finding that Dr. Phillips's report was unpersuasive, as judging the credibility of witnesses and weighing the evidence presented in a claim are both functions that exclusively belong to the trier of fact.

As noted by the ICA, the applicable statute further provides that "[u]nder no circumstances shall a claimant be entitled to receive temporary total disability benefits either beyond the date the claimant is released to return to work or beyond the date he or she actually returns to work." *Smith*, 2025 WL 328220, at *3 (quoting West Virginia Code § 23-4-7a(e)). It is undisputed that, after the compensable injury occurred, the claimant last worked on April 30, 2023. While Dr. Blaine

---

[3] The employer further argues that the claimant has a history of hearing problems and that her ongoing issues are not related to the compensable injury. While the claimant's history of hearing problems is undisputed, according to the affidavit from the employer's human resources director, the employer's alleged offer for the claimant to return to work included the restriction that she would not be exposed to loud noises while on the job. As found by the Board of Review, Dr. Phillips, who issued a report supportive of the employer's position, did not address whether the claimant was disabled from returning to work if her job continued to expose her to excessive noise. Dr. Phillips expressed doubt as to whether the claimant suffered a significant electric shock injury in the manner she described, which contributed to the Board's assessment of his report as not persuasive, because the claimant was diagnosed with a ruptured right eardrum and the claim administrator had held that injury to be compensable. In granting temporary total disability benefits, the Board noted that, after September 15, 2023, the claimant must show continued entitlement to such benefits by proper medical evidence. For the period beyond September 15, 2023, the employer may raise its argument that ongoing issues are not related to the compensable injury. The instant appeal addresses the period from May 1, 2023, to September 15, 2023, and questions of compensability are not part of this appeal because the claim administrator accepted the claim as compensable for a right ear injury in its initial order—an order that was not protested.

[4] *See* fn.3, supra.

released the claimant to return to work, other healthcare providers that evaluated the claimant indicated that she could return to work only if she was not exposed to excessive noise while on the job. According to the employer, the employer's June 12, 2023, offer for the claimant to return to work included the restriction that she would not be exposed to loud noises. *See id.*

The ICA criticized the Board for observing that the record did not contain a written version of the June 12, 2023, offer, stating that "[w]e find nothing under current West Virginia law that requires a job offer made to a claimant be in writing." *Id.* at \*4. The ICA's criticism is misplaced because the Board did not conclude that West Virginia law requires an employer to make an offer to return to work in writing. Instead, the Board viewed the lack of a written version in the record as impacting the credibility of the employer's testimony that the employer had offered the claimant a job within the medical restrictions necessitated by her compensable injury, given that certain healthcare providers opined that the claimant could not be exposed to loud noises. While the claimant was cross-examined at her February 2024 deposition, she was not asked whether the employer offered her work without exposure to excessive noise in June 2023, and, if so, whether she refused the offer. Thus, it was within the Board's purview, as the trier of fact, to find that the employer's testimony concerning the alleged June 12, 2023, offer was not credible. Therefore, we reverse the ICA's decision in *Smith* as the findings the Board of Review made in granting temporary total disability benefits from May 1, 2023, through September 15, 2023, and thereafter as substantiated by proper medical evidence, were not clearly wrong.

Reversed.

**ISSUED: September 23, 2025**

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison

**DISSENTING:**

Justice C. Haley Bunn

BUNN, Justice, dissenting:

I dissent to the majority's resolution of this matter and would affirm the ICA. The ICA correctly determined that the Board disregarded unrebutted, sworn evidence that Ms. Smith rejected an offer to return to job duties that adhered to her physicians' stated restrictions. West Virginia Code § 23-4-7a(e) prohibits receipt of temporary total disability ("TTD") benefits after an employee returns or has been released to return to work: "Under no circumstances shall a claimant be entitled to receive temporary total disability benefits either beyond the date the

claimant is released to return to work or beyond the date he or she actually returns to work." *Id*. No physician of record stated that Ms. Smith was wholly unable to work; instead, each placed only a very discrete restriction on her work environment. The nature of her employer's business allowed it to meet that restriction easily and it offered that job modification to her promptly. The ICA correctly recognized that the Board's refusal to credit this "reliable, probative, and substantial evidence" was error. West Virginia Code § 23-5-12a(b); Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

As discussed by the majority, in response to Ms. Smith's Attending Physician's Reports' indication that her lone restriction was to "[t]olerance of noise" or "loud noise," WVPA offered Ms. Smith a nighttime shift with "minimal to no noise" and no use of the headset that caused her injury; however, she declined that offer. Evidence of the offer was admitted by way of sworn affidavit from WVPA's Human Resources Director. Ms. Smith was neither asked about this offer during her deposition nor did she offer any testimony that might call it into question. However, with regard to this seemingly determinative evidence about Ms. Smith's entitlement to TTD benefits, the Board's decision states only that—despite this affidavit—"[t]he record is void of any written offer of employment to the claimant within her restrictions[.]" It provides no further analysis of the impact of such an offer on Ms. Smith's reciprocal obligations or the applicable statutory authority. Instead, the Board simply leaps to its generic conclusion that Ms. Smith had "work restrictions" from April until September and was therefore entitled to TTD benefits.

Relying on this limited and dismissive reference to the WVPA's offer of modified work duties, the majority speculates that the Board simply did not find the offer credible and therefore the ICA improperly invaded the Board's purview in that regard. However, evidence that Ms. Smith was offered modified duty was submitted under oath and was wholly unrebutted. Even assuming the Board's reference to absence of a "written offer" conveys skepticism about the existence of the offer in the first instance, there is nothing in the record to cast doubt onto the affidavit's veracity. In fact, the absence of a written, contemporaneous offer to Ms. Smith is explained in the affidavit itself which states that the Human Resources Director verbally extended the offer to Ms. Smith. Whether WVPA reduced the offer to writing at any point is not only unknown, but irrelevant. The unrebutted affidavit stands as sworn, probative evidence of not only the offer, but Ms. Smith's refusal of it.

This Court has made clear that the Board is not permitted to disregard probative evidence "without explaining why[.]" *Workman v. ACNR Res., Inc.*, 251 W. Va. 796, ___, 916 S.E.2d 638, 644 (2025). In addressing *conflicting* evidence, this Court has found that the Board is obliged to "provide some articulation for *why*" certain evidence is credited over other evidence. *Gwinn v. JP Morgan Chase*, No. 23-172, 2024 WL 4767011, at *4 (W. Va. Nov. 13, 2024) (memorandum decision); *see also Workman*, 251 W. Va. at ___, 916 S.E.2d at 643 (rejecting Board's disregard of conflicting evidence where it "provided no explanation to bolster its conclusory determination"). Certainly, probative evidence that stands unchallenged minimally requires the same consideration and explanation. *See Wilkinson v. W. Va. Off. Ins. Comm'n*, 222 W. Va. 394, 401, 664 S.E.2d 735, 742 (2008) (reversing workers' compensation tribunal that

"essentially ignored" probative evidence).[1] Neither the Board nor the majority explain why the Board might have reasonably found the offer not credible. More importantly, the Board may not disregard undisputed evidence under the guise of unsubstantiated "credibility" determinations.

Because the majority's analysis conflates credibility determinations with the impermissible disregard of substantial, unrefuted evidence, I respectfully dissent.

---

[1] The Board's order also suffers from threshold factual misapprehensions affecting its decision. First, the Board's analysis states that "[t]he first few nurse practitioners that examined [Ms. Smith] . . . in May 2023 and June 2023 indicated that [Ms. Smith] was disabled from work." To that point, the order specifically states that Ms. Smith's initial Attending Physician's Report estimated her return to work date as July, 2023. That report contains no such statement and in fact estimates her return to work date as May 24, 2023—two days after its effective date. A physician who saw Ms. Smith on May 24 released her to return to work the following day and his "Certification of Illness" leaves blank the line for "limitations." *See Wilkinson*, 222 W. Va. at 400, 664 S.E.2d at 741 (reversing where tribunal's decision "misstates and mischaracterizes particular components of the evidentiary record[]").

These factual misstatements are reflected in the Board's overstatement that Ms. Smith's treaters found her "disabled from work" or "unable to work." These characterizations ignore the fact that each of her Attending Physician's Reports state that her only restriction was loud noise. The Board's order and the majority's decision render meaningless the statutory limitation on temporary total disability benefits because in situations where, as here, that restriction is met by the employer, an employee may simply decline to return to work which he or she is capable of performing and continue to collect TTD benefits.